JOS. CALCUTT, Trading as THE VENDING MACHINE COMPANY, v. N. H. McGEACHY, Sheriff of CUMBERLAND COUNTY; BARNEY Mc-BRYDE, Chief of Police of the City of FAYETTEVILLE, and A. A. F. SEAWELL, Attorney-General of the STATE OF NORTH CAROLINA.

(Filed 2 February, 1938.)

1. **Declaratory Judgment Act § 2a—**

Only civil rights, status and relations may be determined under the Declaratory Judgment Act, and when an action instituted thereunder involves both civil and criminal matters, the courts have jurisdiction to determine only the civil matters. C. S., 628 (a-o).

2. **Constitutional Law § 7—Nature and extent of police power of the State.**

The police power is a necessary attribute of the sovereignty of the State and embraces the power to make regulations relating to the public health, safety, morals, comfort, convenience and welfare and the peace and good order of the community, the exercise of the power being largely in the discretion of the Legislature, limited only by the requirements that the regulations should not unnecessarily interfere with the rights of the citizen, and that there must be a reasonable relation between the regulation and the purpose sought to be accomplished.

3. **Constitutional Law § 6b—**

The courts will not declare a law unconstitutional unless clearly so, since the presumption is in favor of constitutionality.

4. **Constitutional Law § 10—Statute prohibiting slot machines which enable player to make varying scores upon which wagers may be made held valid.**

Ch. 196, Public Laws of 1937, prohibiting coin slot machines in the operation of which a player may make varying scores or tallies upon

1—213

which wagers may be made, and differentiating between such machines and those returning a definite and unvarying service or thing of value each time they are played, is in accord with the policy of the State to suppress gambling and has a reasonable relation to this objective, and the statute is constitutional as a reasonable regulation relating to the public morals and welfare, well within the police power of the State.

BARNHILL, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Sinclair, Resident Judge,* in Chambers, 26 July, 1937, of CUMBERLAND.

Action under Uniform Declaratory Judgment Act of North Carolina (ch. 102, Public Laws 1931; C. S., 628 [a]-628 [o]) to determine constitutionality of ch. 196, Public Laws 1937, prohibiting "manufacture, sale, possession, and use of slot machines, gambling apparatus and devices," for declaration of rights, status and other legal relations thereunder, and for injunction.

Plaintiff alleges that he is "engaged in the business of managing and selling to parties both in the State of North Carolina and in other states certain vending and amusement machines and devices, . . . and has made and . . . is making, storing, keeping, possessing, selling, transporting (both within the State and from this State into other states) said machines and devices, and . . . is under contractual obligation to make and is prepared . . . to make such machines and devices"; that he has in his possession a number of machines and devices of twelve types "operated by slot, the sole function of which is to collect (in lieu of personal collection) the uniform and unvarying use charge, namely, charge made for use of the machine"; that, as to the first eleven types, "in their playing the operator or player may make varying scores or tallies; that the twelfth type involves no element of either skill or chance, since the return in merchandise is invariably predictable and known in advance to the operator; and there is no chance to make varying scores or tallies"; that, claiming to act under the authority of ch. 196, Public Laws of 1937, declaring the maintenance or keeping of all or any machines therein described to be a public nuisance, defendant McGeachy, sheriff, and McBryde, chief of police, have threatened to seize all such machines which may on or after 1 July, 1937, be, remain or come into the possession of plaintiff, to institute proceedings against plaintiff under C. S., 3181 to 3187, for injunction, abatement and other penalties therein set out, and to prosecute against plaintiff "both such civil and such criminal actions for and on account of the possession, maintenance, sale, transportation and the making of contracts and agreements with reference to the same as may be authorized by said" Public Laws of 1937. Defendants, sheriff and chief of police, admit that, acting in accordance with their oaths of office and with said laws, they are preparing to enforce the same as to such machines.

CALCUTT v. McGEACHY.

The court below found the following facts: "The plaintiff at the time this action was instituted, and at the time of the hearing of the same, had in his possession a large number of slot machines, devices and apparatus, which under the provisions of ch. 196, Public Laws 1937, it was unlawful to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend, or give away, transport or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away or to permit operation of, and that for a long while the plaintiff has been engaged in the business in this State of making, storing, keeping, possessing, selling and transporting within and without the State such slot machines, apparatus and devices; that the plaintiff in the complaint filed herein admitted that he owned and had in his possession various types of slot machines, apparatus, and devices which are described in the complaint as consisting of twelve (12) types by reference to characteristics of said machines, devices and apparatus and the results achieved from the operation thereof; that no further description or designation of said slot machines was made in the complaint; and that at the hearing the plaintiff requested the court to visit the plaintiff's factory and make a personal inspection of the various types of machines referred to in the complaint, which the court declined to do, the court finding as a fact that the characteristics and nature of said machines, apparatus and devices were sufficiently described in the complaint. It found as a fact that all of the slot machines of the plaintiff as thus described in the complaint, except Type No. 12, are expressly declared to be public nuisances and unlawful under the provisions of ch. 196 of the Public Laws of 1937, if kept in violation of said act. It is further found as a fact that none of the defendants have threatened or intended to enforce the provisions of ch. 196, Public Laws of 1937, against the plaintiff except as to machines, apparatus and devices which are declared illegal and the maintaining or keeping of which is declared to be a public nuisance by the provisions of said law."

The court concluded as a matter of law as follows: "Upon consideration of the statute and the relation of the plaintiff thereto, and a further consideration of the evidence and admissions of plaintiff and defendants made upon the trial of this cause, the court is of the opinion, and so declares, that ch. 196, Public Laws 1937, is constitutional and valid in all its parts, both *per se* and in its application to the matters complained of by the plaintiff, and that with the exceptions of the types of devices included within Type No. 12 of the complaint, the devices catalogued and named by the complaint may not be manufactured, sold, possessed or operated under the said law in this State; that the defendants have the right to enforce the said statute with respect thereto and under the authority of the said statute and other pertinent laws, prosecute the

plaintiff and other persons manufacturing, selling, possessing or operating the said devices contrary to the said statute.

"As described by its characteristics and results of operation, type of slot machine No. 12, as set up in the complaint, involves no element of skill or chance, and invariably returns a definite piece of merchandise, the character of which is known in advance by the operator. As thus described in the complaint the defendants made no contention that said slot machine violated the provisions of ch. 196, Public Laws of 1937; the particulars and exact nature of said machine was not set up in the complaint, but as thus described, ownership and operation of the same is not found to be illegal, and it is further found by the court that no controversy whatever has existed between the parties hereto with respect to such type of machine, and that as to such machine no justiciable cause of action is presented to the court."

From adverse judgment thereon, plaintiff appealed to the Supreme Court, and assigned error.

*Malcolm McQueen and Ehringhaus, Royall, Gosney & Smith for plaintiff, appellant.*

*Attorney-General Seawell and Assistant Attorneys-General McMullan and Bruton for defendants, appellees.*

WINBORNE, J. While on this appeal the question of jurisdiction of the court under the Uniform Declaratory Judgment Act, C. S., 628 (a) *et seq.,* is not presented by the parties, it is proper to state that the action is maintainable only in so far as the legislative act, ch. 196, Public Laws 1937, affects the civil "rights, status and other relations" in the present actual controversy between parties. We consider it only in that aspect.

The court below has found as a fact, without objection, that the first eleven types of slot machines and devices described in the complaint are within the letter of the definition of "slot machines and devices" which are condemned by the act under consideration as public nuisances. In the playing of each of these types the operator may make varying scores and tallies upon the outcome of which wagers might be made. The defendants, sheriff and chief of police, admit their intention and preparation to seize such machines and devices. Therefore, the correctness of the ruling below, as to the rights, status and other relations thereto is unchallenged, provided, of course, the act be constitutional.

The record then presents the determinative question: Is ch. 196, Public Laws 1937, entitled "An act to prohibit the manufacture, possession, sale and use of slot machines, gambling apparatus and devices," constitutional? We agree with the affirmative holding below.

The title of the act manifests the intention and purpose of the Legislature to suppress and prohibit gambling. After prescribing the pro-

hibitive provisions, the definition of slot machines and devices covered by the act is clearly set forth as follows: "Sec. 3. That any machine, apparatus or device is a slot machine or device within the provisions of this act if it is one that is adapted, or may be readily converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated in such manner that the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token, or memorandum, whether of value or otherwise, or which may be exchanged for any money, credit, allowance or any thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device; or in the playing of which the operator or user has a chance to make varying scores or tallies upon the outcome of which wagers might be made, irrespective of whether it may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication or weight, entertainment or other thing of value. This definition is intended to embrace all slot machines and similar devices except slot machines in which is kept any article to be purchased by depositing any coin or thing of value, and for which may be had any article of merchandise which makes the same return or returns of equal value each and every time it is operated, or any machine wherein may be seen any pictures or heard any music by depositing therein any coin or thing of value, or any slot weighing machine or any machine for making stencils by the use of contrivances operated by depositing in the machine any coin or thing of value, or any lock operated by slot wherein money or thing of value is to be deposited, where such slot machines make the same return or returns of equal value each and every time the same is operated and does not at any time it is operated offer the user or operator any additional money, credit, allowance, or thing of value, or check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for money, credit, allowance or thing of value or which may be given in trade or by which the user may secure additional chances or rights to use such machine, apparatus, or device, or in the playing of which the operator does not have a chance to make varying scores or tallies."

Sec. 5 declares an article or apparatus maintained or kept in violation of the act to be a public nuisance.

The above definition manifests the intention of the Legislature to distinguish the *bona fide* merchandise vending machines, picture machines, music machines and machines of like character from well recognized types of gambling slot machines. The line of distinction is illustrated in the judgment below, wherein type 12 is separated from those types

in which there is an element of chance in some form even though such element be only that of making varying scores or tallies on which wages may be made.

In order to properly understand the background, purpose and constitutional force of the act, it is appropriate to review briefly the attitude of the General Assembly with reference to gambling as a State policy. In the year 1848, in *S. v. Gupton,* 30 N. C., 272, *Ruffin, C. J.,* speaking to statutes on the subject theretofore enacted, said: "The Legislature has wisely set its face against the idle and vicious practice of gambling, and to that end passed various laws calculated more or less to suppress it." We find statutes have been enacted from time to time dealing with numerous forms of gambling and nuisances. Then, in 1923, the Legislature gave special attention to slot machines, at that time passing an act making "the operation or possession for purpose of operation of a slot machine, punch board or other gambling device a misdemeanor," when the machine did not produce or give to the person who played it the same return at market value each and every time. Ch. 138, Public Laws 1923. Further legislation was enacted in 1931, defining "an illegal punch board and an illegal slot machine, and to provide punishment for the operator of same." Ch. 14, Public Laws 1931. In 1935 two acts were passed: The first, ch. 37, prohibiting "the manufacture, sale, possession and use of slot machines, gambling apparatus and devices"; and the second, ch. 282, "to regulate the operation of certain coin operated games, devices and apparatus, and to fix the penalties for the violation of the provisions" therein. In each act the Legislature condemned as a public nuisance an article or apparatus maintained or kept in violation of it. Thus, it is seen that the General Assembly in the exercise of the police power vested in it has adopted as a State policy the suppression and prohibition of gambling by means of coin operated slot machines, gambling apparatus or devices.

These acts have met with judicial sanction. The act of 1923 came up for consideration in the case of *S. v. May,* 188 N. C., 470, 125 S. E., 9, in which a conviction for violation thereof was sustained. The 1935 acts were considered and conviction sustained by this Court in *S. v. Humphries,* 210 N. C., 406, 186 S. E., 473. In that case the acts, considered and construed *in pari materia,* declared as unlawful a slot machine "substantially defined as one adapted for use in such a way that as a result of the insertion of a coin such machine may be operated, and, by reason of any element of chance over which the operator cannot have any control over the outcome of the operation of such machine each and every time it is operated, the user may receive something of value." *Hinkle v. Scott,* 211 N. C., 680, 191 S. E., 512. The 1937 Legislature in the act in question has undertaken to clarify the

definition in and to meet the contentions made as to the previous acts. Ch. 196, Public Laws 1937, includes in effect all of the coin operated slot machines, gambling apparatus and devices condemned by and described in the acts of 1923, 1931, and 1935, and goes a step further to include coin operated slot machines "in the playing of which the operator or user has a chance to make varying scores or tallies upon the outcome of which wagers might be made." It is apparent that the Legislature under the police power vested in it has considered it necessary in suppressing and prohibiting gambling to enact laws from time to time to meet changing machines and devices tending to and fostering gambling.

In *Skinner v. Thomas,* 171 N. C., 98, 87 S. E., 976, the Court said: "The police power is an attribute of sovereignty, possessed by every sovereign state, and is a necessary attribute of every civilized government.—6 R. C. L., 183—'It is the power to protect the public health and the public safety, to preserve good order and the public morals, to protect the lives and property of the citizens, the power to govern men and things by any legislation appropriate to that end.' 9 Ency. of U. S. Rep., 473: 'Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life and the beneficial use of property.' *Slaughterhouse cases,* 16 Wall., 36, 21 L. Ed., 394."

"The exercise of this power is left largely to the discretion of the lawmaking body, and the authority of the courts cannot be invoked unless there is an unnecessary interference with the rights of the citizen, or when there is no reasonable relation between the statute enacted and the end or purpose sought to be accomplished. 6 R. C. L., 236." *Durham v. Cotton Mills,* 141 N. C., 615, 54 S. E., 453; *Shelby v. Power Co.,* 155 N. C., 196, 71 S. E., 218; *Reed v. Engineering Co.,* 188 N. C., 39; 123 S. E., 479.

Enactments having for their object the suppression of gambling are within the legislative scope of police power. 12 C. J., 918.

"It has long been the practice in this country for the Legislature of a State . . . to pass laws prohibiting and punishing any practice or business, the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, and to prohibit and punish gambling in various forms in which it is practiced. Such regulations, when not in conflict with general laws or with the Constitution, . . . under which they are enacted, are universally upheld by the courts." *Ex Parte O'Shea,* 105 Pac., 776.

In *Thomas v. Sanderlin,* 173 N. C., 329, 91 S. E., 1028, *Hoke, J.,* said: "It has been properly said that no adequate or satisfactory definition of police power can be given, for as our civilization and social con-

ditions become more advanced and complex the extent and inclusive character of this power is being more and more illustrated, and in the later decisions has been held to embrace not only governmental regulations appertaining to the good order, health, and morals of a community, but also such as are considered promotive of its economic welfare and public convenience and comfort. . . ." Quoting from 6 R. C. L., 193, he continues: "All the property is held subject to the general police power of the State so to regulate and control its use in a proper case as to secure the general safety, the public welfare, and the peace, good order, and morals of the community. Accordingly, it is a fundamental principle of the constitutional system of the United States that rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in it by the Constitution may think necessary and expedient."

"The presumption is that the Legislature has done its duty and that an act passed by it is not in conflict with the Constitution. . . . Again, the courts will not adjudge legislative acts invalid unless their violation of the Constitution be clear, complete and unmistakable." *Stacy, C. J.,* in *Person v. Doughton,* 186 N. C., 723, 120 S. E., 481, citing *Bonitz v. School Trustees,* 154 N. C., 375, 184 S. E., 247; *Coble v. Comrs.,* 184 N. C., 348; also citing the case of *Adkins v. Children's Hospital,* 67 L. Ed., 440, in which the U. S. Supreme Court said: "The judicial duty of passing upon the constitutionality of an act of Congress is one of great gravity and delicacy. The statute here in question has successfully borne the scrutiny of the legislative branch of the Government, which, by enacting it, has affirmed its validity; and that determination must be given great weight. This Court, by an unbroken line of decisions from *Chief Justice Marshall* to the present day, has steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt."

In *S. v. Brockwell,* 209 N. C., 209, 183 S. E., 378, *Connor, J.,* speaking to the power of the courts when validity of a statute is challenged, said: "In the exercise of this power and in the performance of this duty it is a recognized principle, uniformly applied, that the courts will not adjudge that a statute is void on the ground that its enactment was in violation of a constitutional limitation, unless it so appears beyond a reasonable doubt."

In *Glenn v. Express Co.,* 170 N. C., 286, 87 S. E., 136, speaking to the question of the constitutionality of a statute which made it unlawful for any person, firm or corporation to ship, transport, carry or deliver for hire, or otherwise, whiskey, *Allen, J.,* said: "If considered without regard to the policy of the State in favor of prohibition, we would hold

it an arbitrary and unwarranted interference on the right of the carrier to transport, and with the right of the consignee to receive, but when it is understood that the statute is but a means of enforcing a State policy of prohibition, there seems to be such a reasonable relation between the two as justifies upholding the statute as a reasonable regulation." *Skinner v. Thomas, supra.*

In the instant case, when considered in the light of a State policy of suppressing and prohibiting gambling, there is a reasonable relation between a coin operated slot machine in the playing of which the operator may make varying scores or tallies upon the outcome of which wagers may be made, and those so operated which may give a return of something of value which is unknown to or unpredictable by the operator. The element of chance is present. This justifies sustaining the statute as a reasonable regulation, and within the police power vested in the Legislature.

The judgment below is
Affirmed.

BARNHILL, J., took no part in the consideration or decision of this case.