Abraham Sowma et al. *v.* Alban J. Parker,
Attorney General, et al.

October Term, 1941.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and
Jeffords, JJ.

Opinion filed November 4, 1941.

244

*Alban J. Parker,* Attorney General, *Reginald T. Abare,* State's Attorney of Washington County, and *Henry A. Milne,* Grand Juror of the City of Barre, *pro se.*

*Finn and Monti* for plaintiff.

*Jones & Jones, Frederick J. Fayette* and *Joseph S. Wool* for intervenors.

JEFFORDS, J. This case is here on defendants' exceptions to an order of the chancellor restraining them, in effect, from enforcing the provisions of No. 190 of the Acts of 1941.

By P. L. 8696 and 8697 all machines whether known as slot machines, or otherwise, which distributed money or other things of value as the result of some element of chance and thus provided a means for the winning or losing of money were made illegal and their possession was prohibited.

By Part II of No. 38 of the Acts of 1937 the above sections were so amended as to legalize, by the granting of licenses therefor, the ownership and operation of such machines when the re-

sult of their operation depended upon a substantial measure of skill on the part of the one then using the machine. An annual license tax of $200.00 was imposed and in addition thereto an annual machine tax of $25.00 and an annual location tax of $5.00. It was also provided that a license granted under the act should expire December 31 of the year in which it was issued. It was further provided that no license should be issued for the installation of a machine within 300 feet of a school building and children under the age of sixteen years were forbidden to .play such licensed machines. A penalty was provided for the violation of the act.

Without reciting in full the provisions of No. 190 of the Acts of 1941 it is sufficient to say that they amended sections 8696 and 8697 of the Public Laws as amended by Part II of No. 38 of the Acts of 1937 so that the possession or use of so-called slot or pinball machines in which an element of chance enters into the result reached were prohibited and a penalty imposed for the violation of the statute. The sections in the 1937 act relating to the licensing of the machines were repealed and P. L. 8699 was amended so as to permit of the seizure of illegal machines in any place by reason of a warrant lawfully issued. There was no provision made in the act allowing owners of such machines time within which to dispose of them after the act went into effect and there was no provision relating to existing licenses other than before noted. The act was approved March 14, 1941, and it was provided therein that it should take effect September 30, 1941.

The named plaintiff brought a bill of complaint alleging in substance that by virtue of Part II of No. 38 of the Acts of 1937 he had been issued the necessary licenses and paid the license fees on various machines alleged to come within the provisions of the licensing act. That the license period for such machines so owned by him extended by virtue of the licenses granted from December 31, 1940, to and including December 31, 1941. That because of the rights offered and given him under said Acts of 1937 he had purchased said machines, six in number, at the cost of $200.00 each and has expended great sums of money and time for the upkeep, maintenance and repair of the same. He alleges that defendant Parker as attorney general and the other defendants who are law enforcement officers for Washington County intend to and will prosecute him by virtue of No. 190 of the Acts of 1941

if the machines above referred to are in his (plaintiff's) possession after September 30, 1941. He alleges that said No. 190 is unconstitutional as being in violation of the Fourteenth Amendment to the Federal Constitution and in violation of Articles two, four, nine and fifteen of our Constitution. The stated grounds for the alleged unconstitutionality are in substance that by virtue of the licenses in question certain property rights accrued to him which are attempted to be taken away by the act and that because no opportunity is given him to dispose of the machines after September 30, 1941, his property rights in them have been unconstitutionally invaded.

Other alleged licensed owners of so-called pinball machines asked leave to intervene as parties plaintiff. This leave was granted and they filed complaints substantially identical with the one filed by Sowma. All prayed for an injunction restraining the defendants from prosecuting them for violations of said No. 190 and from seizing and confiscating their machines under this act. The defendants demurred to the complaints. A hearing was had and the chancellor made a *pro forma* order overruling the demurrer. He thereupon issued a permanent injunction restraining the defendants and all other law enforcement officers throughout the state from prosecuting the plaintiffs because of the ownership, possession or use of properly licensed machines and from confiscating or destroying such machines. It was stated in the injunction that it should terminate at midnight of December 31, 1941, unless sooner vacated by order of court.

 The plaintiffs seem to have presented in their brief every possible ground for sustaining the ruling of the chancellor so we may properly confine ourselves to a discussion of these grounds in determining whether the injunction should stand. It is claimed at the outset that said No. 190 did not revoke the licenses outstanding at the date of its passage as there was no such express revocation contained in the act and that the Legislature only intended to prohibit the granting of any more licenses after the passage of the act. This claim cannot be sustained. The act makes it unlawful for any person without exception of those having unexpired licenses to have in his possession after September 30, 1941, one of the machines in question. Here there was no saving clause which in all probability would not have been entirely omitted had it been intended to preserve

existing licenses. It is true that repeals by implication are not favored. But when the question arises as to whether a subsequent statute has by implication repealed a former act it is held that the latter repeals the former when the two are so repugnant that they cannot stand together. *Magwire* v. *Village of Springfield,* 111 Vt. 414, 17 Atl. 2d. 260; *Central Vt. Railway, Inc.* v. *Hanley et al.,* 111 Vt. 425, 17 Atl. 2d. 249. It is difficult to perceive how the Legislature could have more clearly expressed its intention to revoke except by the use of express words to that effect. It is plain that the unqualified prohibition of possession of such machines is so repugnant to the right to own or operate by virtue of a license or otherwise that it must be considered that the Legislature intended to and did revoke the existing licenses as of the date that the act took effect. Although the intention to revoke must be determined from the wording of the statute in question so as to make of little value decisions in other cases, we find support for our holding in the following opinions where statutes similar to said No. 190 have been dealt with. *State* v. *Cooke,* 24 Minn. 247, 31 Am. Rep. 344; *Pleuler* v. *State,* 11 Neb. 547, 10 N. W. 481; *State* v. *Holmes,* 38 N. H. 225; *Robertson* v. *State,* 12 Tex. A. 541; 37 C. J. 214.

█ The plaintiffs say that even though the Legislature did intend to revoke, it could not lawfully do so as the licenses were contracts giving them certain vested rights. The answer to this claim is that the licenses in question were not contracts but merely permits to own and use certain machines under certain conditions and thus make lawful what would otherwise have been illegal.

█ It may be assumed that the purpose for the enactment of No. 38 of the Acts of 1937 was in part, at least, to raise revenue. But that it was also enacted in pursuance of the police power of the State cannot be questioned. The very nature of the legislation and the conditions and restrictions imposed on the operation of the licensed machines shows this to be so. These licenses having been granted under the police power of the State they could at will be modified or revoked by subsequent legislation enacted in pursuance of that power without violating any constitutional provision forbidding enactment of laws impairing the obligations of contracts or the taking of property without due process of law. *State* v. *Gibbs and Lynch,* 82 Vt. 526, 74 Atl.

229, 24 L. R. A. (N. S.) 555; *State* v. *Burlington Drug Co.,* 84 Vt. 243, 78 Atl. 882. The foregoing cases had to do with liquor licenses but there can be no distinction in principle between such licenses and the ones here in question. It is sufficient to say of the cases holding opposite to our conclusions on this subject that they either had to do with licenses of an entirely different nature from the ones under consideration or else present views contrary to the great weight of authority. See 33 Am. Jur. 381. The claim that the licenses were not revocable because more than a nominal amount was paid for them is without merit. *Tr. of Caledonia Co. Gram. School* v. *Kent,* 86 Vt. 151, 159, 84 Atl. 26; Cooley's Constitutional Limitations, 8th ed. Vol. 1, page 578. That No. 190 of the Acts of 1941 was also a police measure cannot be doubted as it is apparent that it was passed in order to promote the morals and general welfare of the citizens of the State for it had become a matter of common knowledge that the results of the playing of such machines were iniquitous and detrimental, both financially and otherwise, to the players and often to those dependent upon them.

The question is then, whether the general rule is altered because no provision was made in the repealing act for the refund to licensees for the unexpired terms of the licenses. In the case of *State* v. *Burlington Drug Co., supra,* this same question was raised. There it is said at page 248: "The revocation of the license without a repayment to the licensee of any portion of the sum paid by him for the license infringes no constitutional right, for the license is not a contract but a permit to sell subject to restrictions, and from its very nature is subject to revocation in consequence of a disregard of such restrictions or in consequence of a change of policy on the part of the government in respect to the exercise of the police power." It is true in that case that the statute provided that upon the conviction of the holder of the license of the offence of which the respondent was convicted that the license should be revoked and the unused portion of the license fee forfeited. It is apparent, however, that the Court would have held as it did if there had been no breach of statutory restrictions or conditions and only a change in policy on the part of the State in the matter. For additional authorities to the effect that licenses such as the ones here in question can legally be revoked in the exercise of its police power by

the governmental power that issued them without the return of any of the unearned part of the license fees see Cooley's Constitutional Limitations, 8th ed. Vol. 1, page 578, and cases cited therein in note 1 and also 37 C. J. 214. It might have been fairer to have authorized a return but that was a matter of policy for the Legislature to determine and is no concern of ours.

The remaining point to consider is whether the lack of time for disposition of the machines after their possession has been rendered illegal makes the act unconstitutional. As a guide in determining this question it seems advisable to state as briefly as possible some of the fundamental principles relating to police power. It is an attribute of sovereignty, or rather it is sovereignty itself. *Bacon et al.* v. *Boston & Maine R. R. et al.,* 83 Vt. 421, 451, 76 Atl. 128. It is given to the people of the State by our Constitution in Art. 5 of Chapter 1 but apart from a written constitutional provision it is inherent in the states. *In re Guerra,* 94 Vt. 1, 18, 110 Atl. 224, 10 A. L. R. 1560. All property is held subject to general regulation by the Legislature under its police power for the common good and general welfare. *Bacon et al.* v. *Boston & Maine R. R. et al., supra.* ''The power is so essential to the welfare of the people that it has been held to be impossible for a state to divest itself of its right and duty in respect of the full exercise thereof, and as well that the Federal Government cannot interfere in the exercise of that right and duty, except by virtue of some authority derived from the Constitution. * * * Subject to constitutional limitations, a state legislature is authorized to pass measures for the general welfare of the people of the state in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted.'' *In re Guerra, supra.* ''A proper exercise of the power is not a violation of the Fourteenth Amendment to the Federal Constitution even though property interests are affected. But the liberty guaranteed by the Amendment may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect.'' Cooley, *supra,* at page 1235 and cases cited. ''The test used to determine the constitutionality of the means employed by the Legislature is to inquire whether the restrictions it (police power) imposes on rights secured to individuals by the Bill of Rights are

unreasonable and not whether it imposes any restrictions on such rights.'' 11 Am. Jur. 1074. Police power legislation does not come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well being, but, under the guise of police regulation, to deprive the owner of his property without due process of law. *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.

From the foregoing statements it is apparent that the act does not for the reason now under discussion violate any constitutional rights of the plaintiffs. As before noted, the apparent object of its enactment was to promote the general welfare and morals of the citizens of this state. There was nothing unreasonable or arbitrary in providing that possession of the machines should become illegal upon the taking effect of the act. When the plaintiffs took out their licenses they must be taken to have known that they could and might be revoked at any time. When they engaged in a business with that hazard attached to it they took the chance that the very thing that has happened might occur. They are in no worse position in the respect claimed than they would have been if their licenses had been revoked at the end of their current year. They were given ample notice and time to dispose of the machines before the law went into effect. The fact that such disposal might have occasioned some loss of use under their licenses falls far short of establishing the taking of their property without due process of law, under the circumstances here appearing. It is obvious that if they were permitted possession of the machines though only for a short time after their use became prohibited there might be danger that they would be put to such illegal operation. The avoidance of any such resulting injury to the public fully justified the Legislature in making the possession unlawful from the time stated.

*Samuels* v. *McCurdy,* 267 U. S. 188, 45 Sup. Ct. 264, 69 L. Ed. 568, 37 A. L. R. 1378 is full authority for our holdings on this point. In that case it was held that a statute making unlawful the possession of intoxicating liquor which was legally obtained before the passage of the act did not unconstitutionally deprive the owner of his property without due process of law. There the owner of the liquor was not a licensee but merely owned the liquor as a

private citizen. See, also, in support of our holding *Mugler* v. *Kansas, supra*; Cooley, *supra,* at page 1256. *Illinois Cigarette Service Co.* v. *City of Chicago,* 89 Fed. 2d. 610, 111 A. L. R. 749, and *State* v. *Burgoyne,* 7 Lea. 173, 40 Am. Rep. 60, are referred to as cases having facts similar to the ones in the case at hand.

 *Samuels* v. *McCurdy, supra,* had to do with the Fourteenth Amendment, and what we have said applies also to the objection that the statute violates that constitutional provision, but the holding in that case and our views of the matter apply equally well to the claim that the act violates Article 9 of our Constitution in the way of infringing the plaintiffs' property rights in the machines. Nor can the exercise of the police power under the act be construed as the taking of private property for public use without the payment of compensation. *Mugler* v. *Kansas, supra.* Consequently there was no violation of Article 2 of our Constitution. It is difficult to perceive any basis for the claim that the act contravenes Article 4 of the State Constitution and we are given no aid from the plaintiffs in their brief on this point. In disposing of any doubt that could be raised by this claim it is sufficient to say in addition to what we have already held as to the nature of the licenses and the right to revoke the same that P. L. 8699, as amended, provides for a hearing on the question of the disposition of any machines seized by virtue of P. L. 8698. Article 15 of our Constitution has no application to the facts in the case.

Our conclusions are that No. 190 of the Acts of 1941 does not in any way contravene the Fourteenth Amendment to the Federal Constitution nor any of the provisions of our Constitution. Consequently,

*The order of the chancellor overruling the demurrer is reversed, the bills of complaint are adjudged insufficient, the same are dismissed with costs and the injunction is dissolved.*