**WASHINGTON COIN MACH. ASS'N et al.**
**v. CALLAHAN, Assistant Superintend-**
**ent, Metropolitan Police, et al.**

No. 8490.

United States Court of Appeals
District of Columbia.

Argued March 14, 1944.

Decided April 17, 1944.

Mr. William E. Leahy, of Washington, D. C., with whom Mr. Nicholas J. Chase, of Washington, D. C., was on the brief, for appellants.

Mr. Charles B. Murray, of Washington, D. C., with whom Mr. Edward M. Curran, of Washington, D. C., was on the brief, for appellee Curran.

Messrs. Richmond B. Keech, Corporation Counsel, D. C., Vernon E. West, Principal Assistant Corporation Counsel, D. C., and Chester H. Gray, Assistant Corporation Counsel, D. C., all of Washington, D. C., entered appearances for appellees Callahan and Kelly.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

GRONER, C. J.

The penal statutes of the District of Columbia make it unlawful to set up or keep in the District any kind of gambling device designed for the purpose of playing any game of chance *for money or property*.[1]

---

[1] Code 1940, Title 22, Sec. 1504. "Whoever shall in the District set up or keep any gaming table, or any house, vessel, or place, on land or water, for the purpose of gaming, or gambling device commonly called A B C, faro bank, E O, roulette, equality, keno, thimbles, or little joker, or any kind of gaming table or gambling device adapted, devised, and designed for the purpose of playing any game of chance for money or property, or shall induce, entice, and permit any person to bet or play at or upon any such gaming table or gambling device, or on the side of or against the keeper thereof, shall be punished by imprison-

Appellants are in the business of distributing and operating locally certain types of pin-ball amusement machines. A number are in operation in retail stores and are used by the customers of such stores—it is claimed—wholly for their entertainment, presumably while lingering to be waited on by too busy clerks. The machine stands some three or four feet from the floor, supported on wooden legs. It has a wooden body covered by glass and is operated by electricity. The player inserts a five cent piece in a slot, which releases a number of balls; he then pulls a lever which projects the balls onto a board containing objects to be struck. A mechanical device records the score on the basis of the balls successfully striking various objects. An illuminated backboard announces the result. If the player achieves a certain minimum, he receives a "free play," or, described differently, another "try" without an additional coin, *but nothing more.*

On March 6, 1942, the Assistant Superintendent of Washington Police issued an order, effective on and after April 15, 1942, directing the officers of the force to seize all such machines as gambling devices and to prosecute the persons found in possession of them. Appellants thereupon filed a complaint for injunction, limited to testing the legality of the order insofar as it directed the seizure of the machines. The trial court, on motion of the District Attorney, dismissed the complaint.

Enough has been said to indicate that the issue below and here is limited to the question whether the award of a free play or a second try, in the circumstances we have described, makes such a device a gaming table and its use a game of chance *"for money or property."* The position of the Government is that any such device which holds out to the player the possibility of any advantage, monetary or otherwise, is within the prohibition of the statute.

The decisions of the courts of the different States determining what character of "slot machines" are and what are not gambling devices are far from uniform, nor are they always helpful in the problem we have because of the diversity of statutes under which they are applied. Unquestionably, the purpose of Congress in the enactment of the local law was to make criminal the use of all contrivances by which money or property is bet or wagered or risked on the chance of some material reward. Hence it is obvious that a crap table, a dice table, a horse race device, keno, a lottery, book making, or a six-wheel or a chuck-a-luck table or a faro table, at which money is bet and won or lost, are all gambling devices as are also many other like schemes or devices. But in all the primary consideration in this jurisdiction is whether the machine or device, whatever its scope or nature, is the inducing cause to gambling for money or property. To gamble, as is well known, is to risk one's money or other property upon an event, chance or contingency in the hope of the realization of gain, and the test as to whether a particular machine combination constitutes a gambling device is, · as the Seventh Circuit Court of Appeals said, whether it is adapted, devised and designed for the purpose of playing any game of chance for money or property.[2] The elements, chance and money or property, are therefore fundamental ingredients. In a case construing a State statute like that we have here and involving a machine similar to the one in question, the Court of Appeals in the 8th Circuit said:[3]

"These machines are lacking in the essential elements necessary to make of them gambling devices or gambling machines. There is no element of gain or loss, financial or otherwise, involved in the transaction."

And the Second Circuit reached precisely the same conclusion on substantially the same state of facts, saying:[4]

"One may not suppose that a person desiring to gamble would put up money in the hope of obtaining tokens which can be used only to produce insignificant humorous sayings. The amusement feature of the machine does not make the machine a gambling device. It arouses interest and perhaps attracts customers to the machine in much the same way as advertising would, but this is lawful."

In both the last mentioned cases the player, upon obtaining a successful score, received replay tokens. The difference here is that in the present case there were none. And so in People v. Jennings, 257 N.Y. 196, 177 N.E. 419, the Court of Ap-

---

ment for a term of not more than five years."

[2] Chicago Patent Corp. v. Genco, Inc., 124 F.2d 725, 728.

[3] Davies v. Mills Novelty Co., 70 F.2d 424, 426.

[4] Mills Novelty Co. v. Farrell, 64 F.2d 476, 478.

peals of New York said that a machine of this general nature, operated generally in the same manner, is not a gambling device. It said:

"The only chance connected with the operation of the machine is that wit or humor may momentarily brighten up the vacuous minds hunting amusement."

 The Supreme Court of Louisiana, in State v. Frusha, 150 La. 995, 91 So. 430, 431, 24 A.L.R. 394, under a statute denouncing the obtaining of "money or property" by means of the well known "confidence game," held that obtaining the extension of a loan by false pretences was not obtaining *property* within the statute. To the same effect is State v. Waite, 156 Kan. 143, 131 P.2d 708, in which the term "property" as used in an anti-gambling statute, was said to include goods, chattels, effects, evidences of rights in action, and all written instruments by which any pecuniary obligation, or money or right or title to property, real or personal, but that none of these should be expanded to include a free amusement feature like the one in question here. We think this is the correct rule to apply. See also Gayer v. Whelan, 59 Cal.App.2d 255, 138 P.2d 763, 765; In re Wigton, 151 Pa.Super. 337, 30 A.2d 352, holding that the right or privilege to a second try or a replay for a high score on a machine of this kind is not a thing of material value and hence not property in the sense in which the word is used in defining a gambling device. Many similar additional cases to the same effect have been examined by us, the citation of which will add nothing to the reasoning, but which satisfy us that the balance of judicial opinion is on the side of construing the particular character of machine we are concerned with as not within the prohibition of the gambling laws. And this is also our opinion, for as Chief Justice Alvey of this court remarked many years ago, the vice of the thing is the inducement to the unwary to become the victims of the wily and the scheming. No amount of imagination can produce that result from this contrivance. Whatever inducing motive may actuate the restless, the idle or the curious to spend their time in this silly form of amusement, it certainly is not the gambling instinct, nor is it the incitement to gain by chance, any more than is the game of solitaire. In the one case no more than in the other is there the hope or chance of a reward which is either money or property.

The action of the lower court must therefore be reversed, with instructions to proceed consistently with this opinion. In saying this, we wish to be understood as confining our opinion to the facts of this case. We do not intend to extend it to other classes of slot machines using multiple tokens, as in White v. Hesse,[5] where the player had the chance at a "jackpot," a fact which suggests more than appears on the surface, or to cases involving the winning of tokens exhangeable for merchandise, or, indeed, to any sort of contrivance the use of which may directly or indirectly result in a money or property reward—as we define these terms—to the lucky player.

Reversed.

[5] 60 App.D.C. 106, 48 F.2d 1018.