HOLLIDAY v. GOVERNOR OF STATE OF SOUTH CAROLINA et al.

Civ. A. No. 874.

District Court, W. D. South Carolina, Greenville Division.

July 20, 1948.

Henry H. Edens and Henry Hammer, both of Columbia, S. C., and Chandler, Bell & Chandler, of Greenville, S. C., for plaintiff.

John M. Daniel, Atty. Gen., and T. C. Callison and J. Monroe Fulmer, Asst. Attys. Gen., for Governor of State of South Carolina, and Attorney General of State of South Carolina.

J. D. Todd, Jr., of Greenville, S. C., County Atty., for R. H. Bearden, Sheriff of Greenville County, S. C.

Before PARKER, Circuit Judge, and WYCHE and HUTCHESON, District Judges.

WYCHE, District Judge.

The plaintiff in this suit seeks to enjoin the enforcement of Sections 1301, 1301-1, 1301-1(2), Code of Laws of South Caro-

920

lina, 1942,[1] and Act No. 284 of the Acts of 1947 of the General Assembly of South Carolina,[2] 45 St. at Large, p. 592, upon the ground that such Acts are in violation of Section 1, Article 14 (Fourteenth Amendment) of the United States Constitution.

These Acts, as construed by the South Carolina Supreme Court, declare "coin operated non-payout Pin Tables with free play feature" to be gambling machines per se, and as such subject to seizure and destruction.[3]

An interlocutory injunction was sought and a Court of Three Judges was constituted, pursuant to Section 266 of the Judicial Code, 28 U.S.C.A. § 380.

By consent, a hearing was held at Asheville, North Carolina, on June 23, 1948, at which time it was agreed by counsel for all parties that the case be submitted for a final decree upon the merits.

The basis for the jurisdiction of this Court is the allegations of plaintiff that he is the owner and conditional vendor of legal coin operated amusement machines (known as "coin operated non-payout Pin Tables with free play feature"), without any gambling feature, located at various places in the State of South Carolina; that the machines are of a value in excess of $3000, and that the interest of the plaintiff as owner and conditional vendor of the machines

[1] "§ 1301. Slot machines unlawful. Except those giving certain returns.—It shall be unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State, any slot machine of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return value for each coin deposited therein, and in which there is no element of chance. Any person who shall violate this section shall be subject to a fine of not more than one hundred dollars, or imprisonment upon the public works of the county wherein the offense is committed for a period of not more than thirty days.

"§ 1301-1. Unlawful to keep or operate vending or slot machines, punch board, etc., pertaining to game or chance.

"(1) Certain machines excepted.—It shall be unlawful for any person, firm, or corporation to keep on his, her, or its premises, or operate or permit to be kept on his, her, or its premises, or operated within this State, any vending or slot machine, punch boards pull boards, or other devices pertaining to games of chance of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. Any person, firm, or corporation violating this section shall be subject to a fine of not more than five hundred ($500.00) dollars, or imprisonment upon the public works of the county wherein the offense is committed or in the State penitentiary for a period of not more than one (1) year or both fine and imprisonment, in the discretion of the court: *provided,* that this section

is also intended to prohibit all vending, slot machines, punch boards, pull boards, or other devices pertaining to games of chance, that display different pictures, words, or symbols, at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine.

"(2) Seize said machines—magistrates to order destruction.—Any vending or slot machine, punch board, pull board, or other device pertaining to games of chance, prohibited by this section shall be seized by any officer of the law and at once taken before any magistrate of the county in which such machine is seized, who shall immediately examine same, and if he is satisfied that such vending or slot machine is in violation of this section or any other law of this State, he shall direct that said machine be immediately destroyed."

[2] "Section 1. (a) That every person, firm or corporation owning, operating or maintaining any place of business, or other place, wherein or in connection with which, is operated or located any machine for the playing of music, games or amusements, operated by a slot wherein is deposited any coin or thing of value or any machine in which is kept any article to be purchased by depositing any coin or thing of value, *or any coin operated non-payout Pin Tables with free play feature shall apply for and procure from the South Carolina Tax Commission a license for the privilege of operating any and every such machine and shall pay for such license a tax of Fifteen ($15.00) dollars per machine; * * *."* (Emphasis added.)

[3] Ingram et al. v. Bearden, 47 S.E.2d 833, 834.

is in excess of the sum of $3000; that he has been informed that the defendants intend to seize and destroy all of the machines in which the plaintiff has an interest, either as owner or as conditional vendor, which are located at various places within the jurisdiction of this court; that the machines are not legally subject to seizure and destruction by the defendants; that the amusement machines are not games of chance within the provisions of the foregoing statutes of the State of South Carolina; that the statutes are unconstitutional, null and void, and in violation of the Fourteenth Amendment of the United States Constitution, because the statutes treat, embrace, regard and include the said coin operated amusement machines of the plaintiff as gambling devices per se, and subject them to seizure and destruction as gambling devices per se, although they are inherently innocent, and are not gambling devices per se; that their intended seizures and destruction, or any seizure and destruction of them, are and would be, in violation of plaintiff's constitutional rights; that unless defendants are enjoined, as prayed for, plaintiff will suffer immediate and irreparable injury, and that plaintiff is without an adequate remedy at law.

A temporary restraining order enjoining and restraining the defendants, their agents, or servants, from interfering with, seizing or destroying or threatening to seize or destroy any of the said machines owned by the plaintiff, or in which the plaintiff had an interest, was granted for ten days, without notice, under the provisions of 28 U.S.C.A. § 381, and also, Rule 65, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Subsequently, the temporary restraining order was continued, by consent of the parties, until such time as the issues may be determined on the merits, or until the further order of the Court.

At the hearing plaintiff offered testimony to describe the machines and had one of them operated in open court as part of the evidence in the case. The coin operated nonpayout Pin Tables with free play feature is about five feet long, three and one-half feet high, and is supported by four table legs. The playing field, containing lights and electrical contacts, is enclosed in a cabinet covered with glass, and is about forty-two inches long, and twenty-one inches wide. At the rear of the table is the back-board about twenty-one inches high; it stands with the legs about five and one-half feet high. The illuminated portion of the back-board is two feet by two feet. To put the machine in operation by a player a coin is placed in a slot which releases a certain number of steel balls to the player. To play, the ball is projected onto the playing field by a plunger. "With different combinations, you hit certain numbers. With different (other) combinations, you don't hit certain numbers. Because in hitting certain numbers, you might detract from your score or fix it in such a way that you won't be able to build up a score as high as possible. * * * On this machine, you have numbers 1 through 6 inclusive. By hitting 1, 2, 3, and 4, you hit a light which is a double feature, which doubles the score placed on the bonus. The bonus is graduated by yellow and purple lights, distributed on the playing field. Every time you hit one of these playing lights (Illustrating), you advance your bonus one time. In order to take that bonus off, the ball has to drop through this playing field here. (Indicating) When you hit 1, 2, 3, 4, you light up a double-feature bonus, one hundred thousand, which enables you to collect two hundred thousand on your bonus. When you hit your 5 and 6, you enable yourself to collect triple your ordinary bonus on the single." Some players make consistently higher scores than others. "If a person walks in a place now and then and puts a nickel in the machine, he has no idea as to how the machine reacts when the ball hits a bumper. He can study the combinations, know where the ball is going to hit, know where he wants to put the ball and know how to put it there. Some person might put a nickel in and the ball rolls in and you don't get anything. You have to know how to operate the machine in order to get a score. * * * The skill comes in when you want to hit a certain light, you have to know how hard to pull your plunger and how far to let your ball go to hit that light. If you don't know, naturally, you will not hit that light."

922

After the ball has been released by the plunger and when the ball starts down the playing field the player can guide it. "There is such a thing as shaking a pin ball machine. If you stand and let the machine idle it will strike a bumper with less force and rebound with less force than if you push the machine. * * * It can be used as a gambling device. * * * When you play your ball on your playing field, you strike certain lights. If you will watch these columns, they advance. (Indicating and illustrating) When you go through this slot, you get a single bonus. You light 1, 2, 3, 4, for a double bonus; light 5 and 6, you will have a triple bonus, which will give you three hundred thousand." "Flippers" enable a player to utilize visual timing or physical timing to influence the course of the ball. "If you know how to operate the machine, you can catch the ball (with "flippers"), throw it up in the playing field and use it again. You have buttons on the sides. * * * If you strike one bumper and want to hit a certain number, if you don't shake the machine, it will glance, but if you shake the machine, it will go up and give you the object which you want to obtain." In demonstrating the machine the witness won eleven free games, which gave him fifty-five free balls to play without putting up any more money. The score of a player is recorded on the back-board. The player has no way of knowing in advance what his score will be, the score being unpredictable, and being determined solely by the particular metallic post or pin with which the ball comes in contact. Plaintiff also offered in evidence slot machines, pull boards, punch boards, and other gambling devices, for the purpose of comparison with the machines sold by the plaintiff.

It is plaintiff's contention that his machines are not gambling devices, per se, and that for this reason the General Assembly of South Carolina has no right to declare them to be such.

The Supreme Court of South Carolina in Alexander v. Martin, Sheriff, 192 S.C. 176, 6 S.E.2d 20; in Alexander v. Hunnicutt, Sheriff, et al., 196 S.C. 364, 13 S.E.2d 630; and in State v. Appley, 207 S.C. 284, 35 S.E.2d 835, 162 A.L.R. 1184, decided that coin operated non-payout pin tables with free play feature were gambling machines per se under the statute, and were subject to seizure and destruction as such. In Ingram et al. v. Bearden 47 S.E.2d 833, the State Supreme Court again held that coin operated non-payout pin tables with free play feature were gambling devices per se, subject to seizure and destruction, and that the licensing Act of 1947 did not render such machines, or their operation, legal.

In Alexander v. Martin, Sheriff, 192 S.C. 176, 6 S.E.2d 20, 23, the South Carolina Supreme Court gave its reasons for declaring coin operated non-payout pin tables with free play feature gambling devices per se in the following words:

"While it is true that the player receives the same number of balls for each coin deposited, he may or may not make the same score for each coin's worth of balls played. This in itself is an element of contingency, dependent upon chance, and would make of the machine an unlawful device, inasmuch as the law above quoted condemns all vending or slot machines or other devices pertaining to games of chance, which display different pictures, words or symbols at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine.

"In addition to this, contingent upon the score recorded for a player, free games are awarded. Therefore, it is clear that the lure and inducement to the player to operate the machine is the chance of occasionally being allowed to play a game or games without additional cost. This feature, we think, clearly pertains to a game of chance. And this is true, whether the machine is played for amusement or for other returns, such as money.

"Amusement is recognized by the Courts as a thing of value, and where the amount of amusement given by the player of the machine is determined by chance or hazard, such machine is held to be a gambling device."

■ The decisions of the courts of several other states are in full accord with

the South Carolina decisions. Approximately Fifty-Nine Gambling Devices v. People ex rel. Burke, 110 Colo. 82, 130 P.2d 920, 922; People v. Bitter, Sp.Sess., 32 N.Y.S.2d 176, 179; People v. One Pinball Machine, 316 Ill.App. 161, 44 N.E.2d 950, 953; Oatman v. Davidson, 310 Mich. 57, 16 N.W.2d 665, 666. The decisions seem to be unanimous in holding that the prohibition of pin table machines with free play feature is a valid exercise of the police power and constitutes no violation of the Fourteenth Amendment. Woodward v. City of Lithonia, 191 Ga. 234, 11 S.E.2d 476; Eccles v. Stone, 134 Fla. 113 183 So. 628; Calcutt v. McGeachy, 213 N.C. 1, 195 S.E. 49; Sowma v. Parker, 112 Vt. 241, 22 A.2d 513; Phillips v. City of Atlanta, 57 F.Supp. 588, affirmed, 5 Cir., 145 F.2d 470.

The Supreme Court of Georgia (Woodward v. City of Lithonia, 191 Ga. 234, 11 S.E.2d 476) held that an ordinance of the town of Lithonia, Georgia, prohibiting pin table machines was a valid exercise of police power and did not violate the Fourteenth Amendment.

The Supreme Court of Florida in Eccles v. Stone, 134 Fla. 113, 183 So. 628, 631, in holding that non-payout pin table machines were gambling machines per se, and that the statute declaring them so, did not violate the Fourteenth Amendment, but that such a statute was a valid exercise of the police power, said: "It is also a matter of common knowledge that pursuant to the passage of that Act (the 1937 Florida Act [F.S.A. § 849.15 et seq.] which prohibited the operation of the 'one-armed bandit' type slot machine) the popular slot machine with its set of pictured wheels, its alluring jackpot and its pull lever, generally known as the one-armed bandit, faded away from the public places and immediately in the places where they had stood were set up the mechanical horse races, marble pin games and other coin-operated mechanical devices, adapted and fit for fast, easy gambling; and it is a matter of common knowledge, of which we cannot plead ignorance, that these machines are generally used as gambling devices and that the gambling element is the principal lure which causes them to be played by the public."

North Carolina has a similar statute and the Supreme Court of that State in Calcutt v. McGeachy, 213 N.C. 1, 195 S.E. 49, 54, decided that a statute prohibiting the manufacture, sale and possession of gambling apparatus, and defining prohibited devices so as to include pin table machines, was a reasonable regulation within the police power of the State of North Carolina, and did not violate the Fourteenth Amendment. In this case it was said: "In the instant case, when considered in the light of a state policy of suppressing and prohibiting gambling, there is a reasonable relation between a coin-operated slot machine in the playing of which the operator may make varying scores or tallies upon the outcome of which wagers may be made, and those so operated which may give a return of something of value which is unknown to, or unpredictable by, the operator. The element of chance is present. This justifies sustaining the statute as a reasonable regulation, and within the police power vested in the Legislature."

The Supreme Court of Vermont in the case of Sowma v. Parker, 112 Vt. 241, 22 A.2d 513, 516, in deciding that an Act prohibiting pin ball machines was constitutional, said: "That No. 190 of the Acts of 1941 was also a police measure cannot be doubted as it is apparent that it was passed in order to promote the morals and general welfare of the citizens of the State for it had become a matter of common knowledge that the results of the playing of such machines were iniquitous and detrimental, both financially and otherwise, to the players and often to those dependent upon them."

In the case of Phillips v. City of Atlanta, 57 F.Supp. 588, the United States District Court for the Northern District of Georgia, declared that an ordinance of the City of Atlanta prohibiting pin ball machines was a valid exercise of the police power against an attack on the ordinance on the grounds that it violated the Fourteenth Amendment. The Circuit Court of Appeals for the Fifth Circuit affirmed the District Court. Phillips v. City of Atlanta, 5 Cir., 145 F.2d 470.

It is well established that statutes having for their object the suppression of

gambing are within the scope of the police power vested in the States. 12 C.J. 918, 16 C.J.S., Constitutional Law, § 186.

In the case of Murphy v. California, 225 U.S. 623, 32 S.Ct. 697, 698, 56 L.Ed. 1229, 41 L.R.A.,N.S., 153, the Supreme Court declared that: "The 14th Amendment protects the citizen in his right to engage in any lawful business, but it does not prevent legislation intended to regulate useful occupations which, because of their nature or location, may prove injurious or offensive to the public. Neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But, between the useful business which may be regulated and the vicious business which can be prohibited lie many nonuseful occupations, which may, or may not be harmful to the public, according to local conditions, or the manner in which they are conducted. * * * 'A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious.' "

Plaintiff relies strongly upon the case of Washington Coin Mach. Ass'n v. Callahan, 79 U.S.App.D.C. 41, 142 F.2d 97, 98. In this case the United States Court of Appeals of the District of Columbia was construing the penal statutes of the District of Columbia, which make it unlawful to set up, or keep in the District any kind of gambling device designed for the purpose of playing any game of chance for *money or property*. In that case it was said: "Enough has been said to indicate that the issue below and here is limited to the question whether the award of a free play or a second try, in the circumstances we have described, makes such a device a gaming table and its use a game of chance '*for money or property.*' * * * Unquestionably, the purpose of Congress in the enactment of the local law was to make criminal the use of all contrivances by which money or property is bet or wagered or risked on the chance of some material reward."

It will be seen that the question in that case was: Was the pin table machine a gaming table and its use a game of chance for "money or property." The South Carolina Statute is much broader. While the opinion of Chief Justice Groner, by way of obiter dictum, and the authorities cited, tend to support plaintiff's contention that a pinball machine is not a gambling device per se, the question there decided was whether or not the machine was used as a game of chance for "money or property." That question is not involved here. We must place upon the South Carolina Statute the meaning given it by the Supreme Court of that State; and the only question that remains is whether, as so construed, the Statute violates the Federal Constitution. In the District of Columbia case, the only question was whether the Statute covered the pinball machines in question in that case.

It is the public policy of the State of South Carolina to suppress gambling. Gambling in all forms is illegal in South Carolina. A negotiable instrument executed in payment of a gambling debt is "utterly void, frustrate, and of none effect" under the statute law of South Carolina (Section 6311, Code of Laws of South Carolina, 1942), and the Legislature of South Carolina, in its discretion, in carrying out this public policy, determined in 1931 that any coin operated machine which does not give a uniform and fair return in value for each coin deposited, and in which there is any element of chance, was illegal as being a gambling device, and as tending to promote and encourage the gambling instinct.

Under the facts in this case and under the authorities herein cited, we must conclude that a coin operated non-payout pin table with free play feature is a gambling machine. The owners of these machines require a price to be paid for operating them. While there may be some skill in operating the machines, as demonstrated to the Court at the hearing, the score the player receives varies with each game and is the result of chance. Depending upon that score the player either receives or does not receive a prize in the form of additional free games and additional amusement. These machines have all the elements of a gambling machine, namely, con-

sideration, chance and prize. They do not give a certain uniform return value for each coin deposited. The varying scores are conducive to side wagers. The owner could easily agree to pay off the winner with money instead of playing balls.

█ The business of the plaintiff in selling and operating pin table machines is not recognized as a necessary or useful business. It is potential of evil. Playing his machines may be fraught with danger to the morals of those who play. These machines are usually located in resorts, public places, hotels, and drug stores, where all who can pay the price are at liberty to come and play. They may have a tendency to collect idle people, school boys and college students together, to detain business people from their business, and wage earners from their work. The owners and operators of such machines are interested in stimulating play and in having as full attendance each day as possible, from which temptations beyond mere amusement are likely to result. The General Assembly of South Carolina, under its police power, had the right to declare such machines gambling machines per se, and as such illegal in the State of South Carolina. It had the right by such legislation to guard the youth of the State, school boys and college students against the insidious temptations and protect them from the evil and corrupting influences that may be clustered around and emanate from the coin operated pin ball machines, an instrumentality that adds nothing to the general welfare, affords no employment to the unemployed, produces nothing, where nothing is bought and carried home and used, and is merely a civic parasite.

█ For the reasons herein stated we must conclude that the statute in this case is clearly a valid exercise of the police power of the State of South Carolina, and constitutes no attempt on the part of the State to deprive plaintiff of his property without due process of law.

The findings and conclusions in this Opinion will stand as the Findings of Fact and Conclusions of Law in this cause under 52(a) of the Rules of Civil Procedure. An Order so providing will be included in the final decree for the defendants which will deny the injunction sought in this suit.

Accordingly, an Order denying the injunction and dismissing the action will be filed herewith.