THE STATE v. JOHN HERNDON, Appellant.—96 S. W. (2d) 376.

Division Two, August 20, 1936.

*Cave & Hulen* for appellant.

*Roy McKittrick,* Attorney General, and *Drake Watson,* Assistant Attorney General, for respondent.

LEEDY, J.—Appellant prosecutes this appeal from a judgment of the Circuit Court of Boone County, convicting him of feloniously setting up and keeping a gambling device in violation of Section 4287, Revised Statutes 1929 (Sec. 4287, Mo. Stat. Ann., p. 2986). His punishment was fixed at a term of six months in the county jail and he appeals. This court has jurisdiction of the appeal because the offense is a felony.

The evidence on the part of the State tended to show the following: That in October, 1933, there was leased to appellant certain premises in Columbia consisting of a five-room house, and about twenty-seven acres of land; the house was a frame structure, located fifty or sixty yards from the road in a grove of trees. In December, 1933, one of the officers of Boone County went to this place about ten o'clock at night, stopping his car a short distance from the house. The curtains were drawn, but after waiting there a while, the appellant, in company with another, came out of the house, and the witness heard the person with Herndon say to him, "You have got a good place here, a nice place out here," and heard Herndon say, "Yes, if the law would leave him alone," or words to that effect— "if the law would leave him alone and not bother him." The witness recognized Herndon by his voice.

On the night of January 27, 1934, the sheriff and his deputies again went to this house at about ten-thirty at night. The entrance of the sheriff was made from the northeast corner. There was a light outside of the door but no light in the first room, nor was any curtain up at the glass door there. The sheriff knocked and someone came to the door, the sheriff asked admission, and the party inside said wait a minute and started back. The testimony of the sheriff was to the effect that he thereupon forced the door open and hurriedly went through that room and another and into the third room at the southeast corner of the house, where he found four, five or six men around a billiard table; that appellant had in his left hand, a stick about three feet long, with a three inch crook on it, and wrapped with adhesive tape, which he supposed was used to roll the dice back, and appellant had just rolled the dice out of a cup onto the table; that he (the sheriff) picked up the leather dice cup, which was about four inches tall, and two inches in diameter, and lined with some kind of cloth, and some money, which was lying directly on the table in front of appellant; that the table was "an ordinary billiard table, with cushions, no pockets and covered with cloth;" that appellant picked up the dice and put them in his pocket; that when the sheriff requested appellant to give him the dice, he said

he had thrown them out the back door. It was shown by the State's testimony that a man by the name of Light had the dice and took them out on the table; that they were "laying by a box on the south side of the billiard table."

There was testimony that the other men stationed around the billiard table were "fading and shooting," and as to appellant betting with anyone, it was shown that "if somebody wanted to shoot, he would 'fade' them, or if he wanted to shoot, somebody would 'fade' him."

There was considerable evidence by neighbors who lived near the house that they saw cars at this house at night, but no signs of habitation in the daytime, and that they never saw nor knew a person by the name of John Turner, to whom reference is made in the next paragraph.

Appellant contended that he had subleased the premises to one John Turner, and in this he was corroborated by some of his witnesses; that on the evening in question he was merely a casual visitor, and arrived shortly before the raid. Appellant admitted there were "four or five fellows at a pool table shooting five, ten and twenty-five cents," and that he joined them in the game. He denied he had had anything to do with taking the table, rake, dice cup or dice to the premises, or setting them up, or that he was in charge of the game. He denied the statement he is alleged to have been made to the effect that he had a nice place "if the law would leave him alone." Several witnesses testified that they knew John Turner, but they were somewhat discredited.

By motion to quash, timely filed, appellant challenged the sufficiency of the information. Being overruled, he properly preserved the point, and urges it here. Omitting formal parts, the information charges that "John Herndon on or about the 27th day of January, 1934, at and in the County of Boone and State of Missouri, did then and there unlawfully and feloniously set up and keep a certain gambling table and/or gambling device, to-wit, one crap table, commonly called billiard table, and dice, upon which table said dice were thrown and used, and which said gambing device (to-wit, said table and dice) were adapted, devised and designed for the purpose of playing games of chance for money and property, and did then and there unlawfully and feloniously entice and permit Jack Light, Harry Todd, A. D. Sikes and/or D. C. Cameron, and other persons whose names are to Wm. H. Sapp, Prosecuting Attorney, unknown to get and play at and upon and by means of the said gambling table, dice and gambling device . . ."

The statute, supra, upon which the information is based reads as follows: "Every person who shall set up or keep any table or gaming device commonly called A B C, faro bank, E O, roulette,

equality, keno, slot machine, stand or device of whatever pattern, kind or make, or however worked, operated or manipulated, or any kind of gambling table or gambling device adapted, devised and designed for the purpose of playing any game of chance for money or property and shall induce, entice or permit any person to bet or play at or upon any such gaming table or gambling device, or at or upon any game played or by means of such table or gambling device or on the side or against the keeper thereof, shall, on conviction, be adjudged guilty of a felony, and shall be punished by imprisonment in the penitentiary for a term of not less than two nor more than five years, or by imprisonment in the county jail for a term not less than six nor more than twelve months.''

Appellant contends the information is fatally defective in that it fails to state the manner in which the table was adapted and designed for the purpose of playing games of chance.

This court has had frequent occasion to give consideration to cases involving violations of the statute in question. The leading case is State v. Wade, 267 Mo. 249, 183 S. W. 598, decided in 1915, in an opinion by the court en banc. Under the construction theretofore given the statute, the information in the case at bar would doubtless be held good.

In the Wade case it was held that a table duly marked and arranged for the purpose, on which the game of craps is played by means of dice for money or property is within the purview of the statute; but it is not specifically enumerated therein, and, therefore, the rule of *ejusdem generis* applied, and the information must contain sufficient averments showing it to belong to the enumerated class, and in such case to merely follow the language of the statute is insufficient. The information charged Wade with having set up and kept ''a certain table and gambling device commonly called a crap table, which said crap table was then and there and on said days and times a gambling device adapted, devised and designed for the purpose of playing games of chance for money and property.'' There was no allegation defining a crap table, or of what it consists, or how designed, or how and by what means the game of craps is played. The allegation that it was ''adapted, devised and designed for the purpose of playing games of chance'' was held to be ''more in the nature of a conclusion than a statement of fact,'' and ''the use of the phrase alone cannot possibly bring the alleged offense within the definition of the felony statute. Something more is evidently required.''

In State v. Morris, 272 Mo. 522, 199 S. W. 144, as in the earlier cases, it was again pointed out that it is not the game, but the *device* at which the statute is aimed. Therein the charge was setting up and keeping ''a certain table and gambling device, to-wit, a poker

table, on which said table a pack of cards and poker chips were then and there used, and which said table was commonly called a poker table, and was adapted and designed for the purpose of playing games of chance for money and property, and by means of which said table, pack of cards and poker chips certain games of chance commonly called poker, were then and there played for money and property, etc.'' The indictment was held fatally defective in two respects, namely (1) in failing to charge that defendant kept and set up or furnished the cards or chips, and (2) in failing to allege in what manner the table was adapted or designed for the purpose of playing games of chance. In connection with the latter, it was said: ''A poker table not being one of the devices enumerated in Section 4750, it would be necessary to point out in what manner a table was, or could be, adapted to poker playing. . . . If the indictment had stated that the defendant set up and kept a gambling device, to-wit, a table, cards and poker chips; that the said table was equipped with said cards and poker chips; and the said table, cards and poker chips were by him thereby adapted, devised and designed for the purpose of playing games of chance (or that by the use of packs of cards and poker chips upon and in connection with said table the same were adapted, devised and designed for the purpose of playing certain games of chance), commonly called poker, and became and thereby was a gambling device, to-wit, a poker table, and that by means of said table, pack of cards and poker chips certain games of chance commonly called poker were played, and that defendant enticed, etc., or words of similar import, then such information would have been sufficient under the ruling in the Wade case and in the Harper case.'' We do not regard the use of the words ''and dice'' following the words ''one crap table, commonly called billiard table,'' together with the allegation set off in parentheses ''(to-wit, said table and dice)'' as meeting the requirements laid down in and the formula prescribed by the Morris case, supra, with reference to specifying the *manner* in which the table was adapted for the purpose of playing games of chance (in this case, craps), and upon the authority of our previous holdings, the information herein must be held bad.

It may not be amiss to call attention to the fact that the evidence also shows the use of a dice box and rake as a part of the process of adapting the billiard table for purposes denounced by the statute, and in this respect the State proved more than it alleged. This merely emphasizes the importance, as well as the correctness, of the rule just discussed. Speaking to a like question in the Wade case, it was said: ''One is not required to wait until the State's evidence is in to know whether he is *charged* with a crime. This much at least must appear from the allegations of the indictment or information— indeed, the State cannot prove what it has not properly alleged, and

particularly can it not supply by incompetent evidence an absent allegation in the charge. We do not allow this even in civil pleading and practice, although, in such cases, we have not the same constitutional inhibition as we have in criminal cases. . . . We further find· from the evidence in this case that the tables operated by defendant are of the class forbidden by this section, but it is by virtue of the evidence alone, and not the information, that we are able to so determine. The State proved more than it alleged.''

While not raised, but in view of the disposition being made of the case, we take occasion to say that the use of the symbol ''and/or'' in criminal pleading is a practice not to be commended. The primary requisite of such pleading is definiteness and certainty, so that nothing is left to inference or intendment, and the use of the symbol mentioned leads to uncertainty and confusion. [Compton v. State (Tex. Cr. App.), 91 S. W. (2d) 732; Tarjan v. National Surety Co., 268 Ill. App. 232.]

·The State cites State v. Greer, 320 Mo. 171, 6 S. W. (2d) 842, but it will be observed that it was there expressly alleged that by means of ''a dice horn and take-off box,'' the crap table was ''adapted, devised and used by Charles Greer to and for the purpose of playing a game of chance thereon and therewith .called craps for money and property.'' There is no such averment in the case at bar. In State v. Williams (Mo.), 273 S. W. 1069, also cited by the State, the court did not pass on the sufficiency of the charge. However, it may be said that from the excerpts therefrom, quoted in the statement of facts, it would seem to have been defective in the respects pointed out in the Wade and Morris cases, but those cases were neither cited or discussed. The case is not authority on the point here involved. [See, also, State v. Harper (Mo.), 190 S. W. 272, and State v. Crayne (Mo.),.216· S. W. 47.]

Other errors assigned go to the sufficiency of the evidence, the giving and refusal of instructions and alleged improper argument on the part of the prosecuting attorney. These assignments will not be examined in view of the holding in State v. Crayne, supra, wherein it was said, ''Since there is no sufficient information in the case, it becomes at once apparent that we are left without a proper standard to measure the sufficiency of the evidence, or to pass upon the relevancy of admitted testimony. Neither can we foreknow the contents of a new information, if the prosecuting officer should find it advisable to proceed further in the case. That being true, any discussion of the other points raised would necessarily be based upon a· supposed, or hypothetical case, and would rise to no higher standard than mere *dictum*. For that reason we decline further discussion of the ·case.''

. The judgment is reversed, and the cause remanded. All concur.