15231

ALEXANDER v. HUNNICUTT, SHERIFF, *ET AL.*

(13 S. E. (2d), 630)

*Messrs. Hughs & Hughs* for petitioner,

*Messrs. John M. Daniel, Attorney General, M. J. Hough and T. C. Callison, Assistant Attorneys General,* for re-

spondent,

March 19, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE L. D. LIDE.

This proceeding was instituted in the original jurisdiction of this Court by permission of the Chief Justice. The verified petition herein alleges that the South Carolina Tax Commission under the authority of Section 101 (1) (a) of Act No. 346, approved July 1, 1939, 41 St. at Large, p. 650 (the general State Appropriation Act), issued to the petitioner licenses for a large number of coin-operated machines, to which the licenses were attached, and the machines were placed at various business establishments in a number of counties in this State; the licenses being for the full fiscal year ending June 30, 1941; but that the respondents, purporting to act under the authority of Section 1301-A, Code 1932, have destroyed a number of the machines owned by the petitioner to which licenses were attached, and that they threaten to seize and peremptorily destroy all of petitioner's machines which have been licensed and placed in operation within the State. The ultimate relief sought is a permanent injunction enjoining the respondents and all other law enforcement officers in South Carolina from seizing and destroying such machines licensed as aforesaid. Upon the filing of this petition a rule to show cause was issued by the Chief Justice returnable before this Court on the first day of the

February term, 1941; and in the meantime the respondents were restrained from destroying petitioner's machines which have been duly licensed.

Upon the return day, pursuant to notice duly given, the petitioner moved for an order of reference, alleging that he owns machines of many, divers and sundry kinds and construction, his contention being that his machines are not inherently gambling devices, and that the respondents by their return and answer describe but one type of machine, alleging that it is within the prohibition of Section 1301-A, Code 1932; and that an issue of fact is thus presented as to the kind, character and nature of the machines which are the subject matter of this action, to the determination of which evidence of the various types of machines should be taken and reported to the Court for its consideration of the matter on its merits. We were of opinion, however, that the Court would probably be sufficiently informed by the filing of affidavits relating to the types of the machines. And pursuant to permission granted by this Court the petitioner subsequently filed a number of supporting affidavits. While each of these affidavits purports to describe a different machine, having a different name, yet it is very evident that the same type of machine is described in all of them, and they all relate to the machine usually called a "pin table". We quote the following from the first affidavit, and the language quoted is almost identical with that in each of the others, the principal difference between the various machines apparently being the number of the so-called "contact points":

"The machine is a mechanical and electrical apparatus, in form commonly called a pin-table. The face is a flat surface, slanting from the rear downward toward the player. On this surface are twenty-eight contact points. At the rear of the machine is an upright face on which the score of the player is indicated. A five cent piece is deposited in a slot, which in turn releases five metal balls. These balls are set in motion by a plunger operated by the player on the right-hand side of

the machine. The ball is thrown by the plunger up a channel to the top of the face of the table at the rear, where it is released and starts its downward course to the foot of the table. Each time a ball comes in contact with one of the contact posts or springs, an electrical connection is made which registers the score of the player on the upright board at the rear of the machine.

"There is no pay-off of any kind on this machine and no apparatus for a pay-off is built into or attached to the machine. The sole return to the player is the amusement or entertainment he derives from his success at running up a score. The skill of the player in starting the ball on its journey with greater or less force, determines largely the course the ball will take and the number of contact points which it touches on its downward course. This machine is well adapted for competitive games between two or more players, and is for amusement only."

The ultimate question before us then, is whether or not such a machine as that described above is in violation of the criminal law of this State as contained in Section 1301-A, Code 1932, and incidentally whether this section has been in any way modified by Section 101, No. 346, Acts 1939.

It is earnestly contended by counsel for petitioner that since the 1939 act expressly provides for licenses of "any machine for the playing of music, games or amusements, operated by a slot wherein is deposited any coin or thing of value," such a machine is thus declared to be lawful, even if it might be construed to come within the terms of Section 1901-A, Code 1932. But we think it is quite apparent that it was not contemplated by the licensing act of 1939 (Sec. 101) that illegal machines should be licensed, or made legal merely because a license happens to have been granted. On the contrary, it is expressly provided in subdivision (5) of that section that the issuance of a license "shall not make lawful the operation of the gambling machine or device, the operation of which is made unlawful under the laws of this State." The suggestion that subdivi-

sion (5) is inconsistent with the prior provisions for a license is clearly untenable, because the section must be construed as a whole, and as so construed its meaning simply is that lawful machines for the playing of music, games or amusements are subject to the licenses therein specified. It was obviously not intended by these revenue provisions enacted in 1939 that previous laws relating to unlawful slot machines should be amended or repealed.

In fact, the law as just stated has already been declared by this Court in the recent case of *Alexander v. Martin*, 192 S. C., 176, 6 S. E. (2d), 20, 23, decided December 6, 1939; but the petitioner prays that the Court review this decision. And we may further say that it is our view that the decision in that case is conclusive on all the points involved here, although the Court was not unanimous. The majority and the dissenting opinions each lucidly states the divergent views of the members of the Court as it was then constituted, and of course the prevailing opinion became the law of the case. And having due regard to the salutary doctrine of *stare decisis* we do not think the Court would be justified in overruling that case. It is manifestly in the public interest that the law remain permanently settled. Especially is this so in the construction of statutes, for if any change in the statutory law is desired, the General Assembly may readily accomplish it.

It is, however, argued that the type of machine described in the affidavits hereinabove referred to differs in material respects from the machines involved in the *Martin case, supra*. It is true that in that case it is stated in the majority opinion that "contingent upon the score recorded for a player, free games are awarded," while there is nothing in the affidavits here to show that this is done, although it is something which might readily accompany the use of such a machine.

However, if we may assume that no free games are awarded and that the only element of chance is as to the score which may be made and indicated as the

affidavits state, the machine comes directly within the terms of the criminal statute, and likewise within the following language contained in the majority opinion in the *Martin case*: "While it is true that the player receives the same number of balls for each coin deposited, he may or may not make the same score for each coin's worth of balls played. *This in itself is an element or contingency, dependent upon chance, and would make of the machine an unlawful device,* inasmuch as the law above quoted condemns all vending or slot machines or other devices pertaining to games of chance, which display different pictures, words or symbols at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine." (Emphasis added.)

The language just quoted, it seems to us, is amply sustained by the following proviso contained in Section 1301-A: *"Provided,* That this section is also intended to prohibit all vending, slot machines, punch boards, pull boards, or other devices *pertaining to games of chance,* that display different pictures, words, or symbols, at different plays, *or different numbers, whether in words or figures,* or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine." (Emphasis added.)

This proviso as above stated definitely condemns as unlawful a machine "pertaining to games of chance" which displays, at different plays, different numbers, whether in words or in figures.

And it may be of interest to observe that the Supreme Court of North Carolina, in the case of *Calcutt v. McGeachy,* 213 N. C., 1, 195 S. E., 49. 51, decided February 2, 1938, had before it for determination the constitutionality of an Act of the North Carolina General Assembly, adopted in 1937, Pub. Laws 1927, c. 196, declaring unlawful a slot machine "in the playing of which the operator or user has a chance to make varying scores or tallies upon the outcome of which wagers might be made." The Court after dis-

cussing several previous decisions held that such a statute was constitutional. We quote the following from the opinion: "In the instant case, when considered in the light of a state policy of suppressing and prohibiting gambling, there is a reasonable relation between a coin-operated slot machine in the playing of which the operator may make varying scores or tallies upon the outcome of which wages may be made, and those so operated which may give a return of something of value which is unknown to, or unpredictable by, the operator. The element of chance is present. This justifies sustaining the statute as a reasonable regulation, and within the police power vested in the Legislature."

For an interesting discussion of the general law relating to gambling devices, reference may be had to 24 Am. Jur. 395.

We are not unmindful of the fact that something is incidentally said in the affidavits filed herein by petitioner about the "skill of the player" in a certain particular as "largely" affecting the score, but the factual basis for what appears to be a mere conclusion is not given in any detail. In other words, there is no explanation as to just how such alleged skill might be acquired or effectively exercised; and certainly there is no denial that there is an element of chance in the resulting score. In fact, when these affidavits are read in the light of the majority opinion of this Court in the *Martin case,* it is quite obvious that if there are any differences between the machines referred to in the *Martin case* and those now under consideration, they are purely superficial, and that all of these machines have the element of chance as the chief attraction; and that they are definitely within the letter and the spirit of the legislative prohibition.

There are indeed slot machines which are entirely lawful, but they are accurately defined in Section 1301-A as being "automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance." These words

plainly indicate what the General Assembly declares to be legal slot machines. We are without warrant to include therein the machines of petitioner, or any of them, described in his supporting affidavits.

The return to the rule to show cause herein is adjudged to be sufficient, and hence the rule should be discharged, and the restraining order vacated and dissolved, the permanent injunction denied and the petition dismissed. And it is so ordered.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE J. STROM THURMOND concur.

MR. JUSTICE BAKER (concurring) :

"Under the binding authority" of *Alexander v. Martin,* 192 S. C., 176, 6 S. E. (2d), 20, I concur in the opinion of MR. ACTING ASSOCIATE JUSTICE LIDE.

MR. CHIEF JUSTICE BONHAM concurs.