15777

## THE STATE v. APPLEY

(35 S. E. (2d), 835)

Messrs. *J. Allen Lambright* and *C. Yates Brown,* both of Spartanburg, Counsel for Appellant,

*Solicitor Sam R. Watt,* of Spartanburg, Counsel for Respondent.

November 2, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court.

This is an appeal from conviction and sentence for violation of section 1301-1 of the Criminal Code of 1942. It is, in part, as follows:

"It shall be unlawful for any person, firm or corporation to keep on his, her, or its premises, or operate or permit to be kept on his, her, or its premises, or operated within this State, any vending or slot machine, punch boards, pull boards, or other devices pertaining to games of chance of whatever name or kind, except automatic weighing, measuring, musical and vending machines, which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. Any person, firm, or corporation violating this section shall be subject to a fine of not more than five hundred ($500.00) dollars, or imprisonment upon the public works of the county wherein the offense is committed or in the State penitentiary for a period of not more than one (1) year or both fine and imprisonment, in the discretion of the court, provided, that this section is also intended to prohibit all vending, slot machines, punch boards, pull boards, or other devices pertaining to games of chance, that display different pictures, words, or symbols, at different plays, or different numbers, whether in words or figures, or which deposit tokens or coins at irregular intervals, or in varying numbers to the player or in the machine."

Additional subsections provide for the seizure of such devices and summary destruction. The devices involved in this prosecution are described in the record as pinball machines and no question is made but that they are illegal. See in this connection, *Alexander v. Martin, Sheriff,* 192 S. C., 176, 6

S. E. (2d), 20, and *Alexander v. Hunnicutt, Sheriff,* 196 S. C., 364, 13 S. E. (2d), 630.

Vaughan Cannon, who testified for appellant, is the owner of Cannon Music Store of Asheville, North Carolina, with a branch operating under the same name in the city of Spartanburg, of which latter the appellant is the manager. Mr. Cannon testified that he has a contract with Camp Croft, a United States military reservation near Spartanburg, whereunder he supplied the camp with pinball machines. His brother, who also testified, manages the business at the camp. On March 4, 1945, Cannon, the owner, shipped seventeen of the machines by common carrier truck from Asheville to Camp Croft, for which he received a bill of lading. The shipment arrived at the camp after the receiving warehouse was closed and after Cannon's representative had left the premises, and the machines were taken to Cannon Music Store in Spartanburg and left there. This was on a Saturday afternoon and on Monday morning the Sheriff's officers, armed with a search warrant, entered the store and found and seized the machines. They were in varying degrees of disrepair and none was completely ready for operation.

Upon conviction, the defendant appealed upon exceptions which he states in argument raise the two following propositions which are quoted from his brief:

I. "That the machines were not 'kept' in accordance with the meaning of the statute under which this indictment was brought and that the defendant had never 'kept' or operated same in violation of the code."

II. "That the machines in question were in interstate commerce from Asheville, N. C., to Camp Croft, S. C., and therefore in interstate commerce and not subject to the jurisdiction of the State Court."

The difficulty with the first assignment of error is that the statute contains no requirement that in order to constitute a violation of it an objectionable machine must be kept for the purpose of operation. The "keeping" is a violation in itself, set off in the law by the disjunctive "or" from the separate crime of operation. Appellant relies on the North Carolina case of *State v. Jones,* 218 N. C., 734, 12 S. E. (2d), 292, in which an indictment was held fatally defective for failure to include an allegation that the defendant operated the gambling devices or kept them for the purpose of being operated. But the distinction between that case and this is quite apparent for the law under which that prosecution was attempted provided that the possession be "for the purpose of being operated."

On the other hand it has been decided by other courts, as here, that a statute which makes a crime of the "keeping" of a gambling device means what it plainly says. It was held in an Illinois case that the mere keeping of a slot machine was an offense under the statute irrespective of whether it was kept for gambling purposes, the court saying · "It was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling purposes or not * * * otherwise, why make it a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping, and why provide for their seizure and destruction?" *Bobel v. Peo.,* 173 Ill., 19, 28, 50 N. E., 322, 64.

The following is quoted from 24 Am. Jur., 423 : "In some jurisdictions, slot machines are expressly brought within the purview of gambling statutes, and the mere keeping of such machine is declared a criminal offense, whether it is kept for gambling or not."

And the following is from the opinion in the Georgia case of *Elder v. Camp, Sheriff*, 18 S. E. (2d), 622: "The keeping of a 'slot machine' of the character described being unlawful, ordinarily and *prima facie* where an owner or operator is found in possession of such a machine, the apparatus is contraband."

It was similarly held by the Supreme Court of Alabama in *Hurvich v. State* (1935), 162 Sou., 362, quoting first syllabus: "Statute making it unlawful for any person to 'possess' 'keep', 'own', set up, operate, or conduct gambling device, and providing for destruction thereof, held intended to prohibit possession or ownership of slot machine, which was gambling device, by dealer in such machines who was not an operator and had no intent to operate it."

The Court said that such was the intention evidenced by the language of the statute and that it was proper for the legislature, in order to prevent the use of a device for gambling, to prohibit its possession or ownership, and that the statute involved did not make the intended use for gambling a prerequisite to the crime.

Thus we conclude in this case that the trial court did not err in giving their ordinary meaning to the words of our statute. It would be a re-writing of the law to imply and apply a further requirement for violation. Justification for the expressed legislative intent is easily seen when it is contemplated how readily every possessor of such an illegal machine might deny an intention to operate it. If it be considered that hardship results from the conviction in this case of temporary possession, it should be borne in mind that the Court did not enact the statute and is powerless to alter or add to it. The record is bare of proof that the defendant, the owner's store manager, consciously or intentionally violated the law, which element, however, is unnecessary for conviction.

Appellant's second question, quoted hereinabove, is also untenable. A subject of interstate commerce is not so hallowed as to be immune from a statute enacted by a State in the exercise of the police power whereby it is declared illegal and subject to confiscation. Precedents relied upon by appellant, such as *Jewell Tea Co. v. Camden,* 171 S. C., 353, 172 S. E., 307, and *Champlain Realty Company v. Brattleboro,* 260 U. S., 366, 43 S. Ct., 146, .... L. Ed., ...., in which articles of interstate commerce were held not subject to State taxation pending transportation and delivery, are not in point for they did not involve contraband goods. Here there is no question of the right of a State to tax legitimate merchandise in the course of interstate commerce.

The ordinary inviolability from State regulation of goods moving in interstate commerce gives way to the reasonable exercise by the States of their police powers which are pursued for the protection of the morals and welfare of their citizens. This is an important principle of our constitutional system and has been recognized and enforced by Federal and State courts since the beginning of their interpretation of our dual system of government. 11 Am. Jur., 85, 91; 24 *idem.,* 399, 400.

The following is the headnote to par. 69, Commerce, 15 C. J. S., 390: "State prohibitory laws concerning gambling are generally held not to violate the commerce clause of the federal constitution or to conflict with federal legislation." And the authorities below are taken from the footnotes in 38 C. J. S., at page 133.

Under a statute authorizing forfeiture of gaming devices, that "crap tables" sought to be confiscated were to be operated in another state was no defense to forfeiture, since it is not material whether property was intended to be set up or operated within territorial jurisdiction of court provided property is found within its jurisdiction, and it is sufficient

if such property be found within jurisdiction of officers and intended to be used for gaming purposes at any place. *Hickerson v. Commonwealth,* 140 S. W. (2d), 841, 283 Ky., 81.

The alleged fact that slot machines and pay-off tables which were seized by police were contained in their original crates as shipped from the factory and that plaintiff, who sought to recover them in replevin action had not operated any of them and that they were intended for sale in a state wherein their possession, ownership, and operation were lawful, did not preclude seizure of such devices under Mississippi statute, nor entitle the plaintiff to recover them. *Clark v. Holden,* 2 So. (2d), 570, 191 Miss., 7.

Pinball machines are "gambling devices" subject to destruction by the state. *Approximately Fifty-Nine Gambling Devices v. People ex rel. Burke,* Colo., 130 P. (2d), 920.

The exceptions are overruled and the judgment affirmed.

Mr. Chief Justice Baker and Messrs. Associate Justices Fishburne, Taylor and Oxner concur.