**STATE of Missouri, (Plaintiff) Respondent,**

v.

**CONTAINER MANUFACTURING COMPANY and Consolidated Container Corporation (In re Search and Seizure at 1825 Chouteau, St. Louis, Missouri), (Defendants) Appellants.**

No. 31233.

St. Louis Court of Appeals.

Missouri.

Jan. 15, 1963.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 11, 1963.

Herman D. Olian, St. Louis, Merle L. Silverstein, Clayton, for appellants.

Daniel P. Reardon, Jr., Circuit Atty., and James K. Pendleton, Asst. Circuit Atty., St. Louis, for respondent.

FRANK W. HAYES, Special Judge.

This is an appeal from an order of the Circuit Court for Criminal Causes, City of St. Louis, Missouri, ordering the confiscation and destruction of certain punch boards. These punch boards, numbering 100,408, were seized under a search warrant directing Sergeant Virgil Kleine of the St. Louis Police Department to search the fifth and sixth floors of a building at 1825 Chouteau Avenue, St. Louis, Missouri, and to seize punchboards and other somewhat related items. These premises were occupied by the appellants Container Manufacturing Company and Consolidated Container Corporation. The appellant Container Manufacturing Company is the owner of the 100,408 punchboards, and all of the other related items which were confiscated were owned by the Universal Manufacturing Company of Kansas City, which neither appeared in court nor made any claim. Counsel for appellant in their brief frankly state that this appeal is limited to the matter of the punchboards only.

Upon the motion to confiscate, the evidence introduced by the State in the Circuit Court is substantially as follows: On November 21, 1961, witness James Reddick,

using the name of Watts, a member of the St. Louis Police Department, visited the premises known as 1825 Chouteau Avenue, St. Louis, Missouri, about 3:00 P.M. He went to the fifth floor and contacted a Mr. Chester Sax. He told Mr. Sax he was interested in purchasing some gambling equipment. Sax took him to the sixth floor into a room where numerous punchboards were stacked almost up to the ceiling. Sax gave him one of these punchboards, identified as State's Exhibit 1. On this punchboard were the following instructions:

"Texas Charlie, 1200 holes, 25¢ Sale. Average Payout: Nos. 77–177–277–377–477 and last sale on board each rec's one punch in jackpot. Jackpot contains 40 holes $5.62 Avg. Board takes in 1200 holes at 25 . . . $300.-00. Pays out: Jackpot average (5) $28.10; Last Sale . . . $5.62; 164 Consolidated at $1.00 . . . $164.00; Average payout . . . $197.72; Average profit . . . $102.28."

On the basis of the punchboard and other gambling paraphernalia observed on the premises, a search warrant was duly issued and a search was made, by Sergeant Virgil Kleine of the St. Louis Police Department and other police officers, of the fifth and sixth floors of premises at 1825 Chouteau Avenue, St. Louis, Missouri, on November 22, 1961. The return to the search warrant disclosed that the officers seized 100,408 punchboards (and other paraphernalia not involved herein). Several of these were introduced in evidence as demonstrating the various types of punchboards seized.

State's Exhibit No. 2 was a cigar box with the name of "Superior" printed on the top. On the inside of the lid were printed the words "Get-A-Hitch". "Jackpot contains $25.00, $20.00, $10.00, $8.00, $6.00, $4.00, $2.00 awards". "10¢ per punch". Also on the inside of the lid appeared "3 bells, $2.00; 2 bells and 1 liberty, $2.00; 3 plums, $1.00; 3 oranges, 50¢" and other awards of varying amounts. The punchboard itself was within the cigar box and bore the name

of "Jack Pot" printed on the board which contained holes and foils usually found on punchboards.

Without burdening this opinion with a detailed description of the various exhibits, it suffices to say that they were punchboards similar to Exhibits 1 and 2 described above. Exhibit 3 was called "Hialeah" and was cigar-box type. It featured horse racing and had a "win section" and "place section" posted on the lid with heads of horses posted over the awards which ran in various amounts. The punchboard and foils were in the body of the cigar box. On the board was listed various awards to "win" or "place". Exhibit 4 was a flat type board. It cost five cents a play and paid "50¢, $5.00, $1.00, 25¢". On the face of the board were various symbols indicating the winning punches. The board itself contained many holes with foils therein. Exhibit No. 5 was more elaborate. It was designated "Pig in a Poke". It was a large board mounted upright on a base upon which were mounted six little pigs. It costs 25¢ to play and "pig seals" paid "four, ten, five or two dollars", with various special awards. The board contained the usual holes with foils therein. The evidence showed that these exhibits were typical punchboards and were symbolic of the thousands seized under the search warrant. There can be no doubt but that these punchboards introduced in evidence qualified as punchboards as the term is used in Section 563.374 RSMo 1959, V.A.M.S. There was no evidence introduced to show that any of the punchboards were ever used for gambling or gaming operations or that the officer saw any gambling conducted on the punchboards. Chester Sax, appellant's only witness, testified that his company manufactured and sold the punchboards; he had no knowledge of any actual gambling done with the board and no further connections with the boards after they were sold; the boards could be used for gambling but also for a great variety of lawful purposes, i. e., for parties and games, sales promotion, incentive to salesmen, etc. There was no evidence that

the punchboards were involved either directly or incidentally in interstate commerce.

It is the appellants' contention that the trial court's order confiscating the punchboards is erroneous because the State failed to prove that the punchboards were used in any gambling or gaming operation, involving a pay-off in money or property as required under Section 542.380 RSMo 1959, V.A.M.S., hence the possession thereof was not unlawful. It is the respondent's position that under Section 563.374 RSMo 1959, V.A.M.S., punchboards are designated as gambling devices per se, are declared contraband, and are subject to confiscation without any showing of their actual use in a gambling operation. Section 563.374 RS Mo 1959, V.A.M.S. provides as follows:

"Every person who shall sell, store, possess or transport except in interstate commerce any punchboard, slot machine, lottery ticket, roulette wheel, policy slip, book, list of numbers or any other evidence of transactions incident to a lottery, or any other gambling device, equipment or article, shall be deemed guilty of a misdemeanor. All such equipment, devices and articles are hereby declared contraband and may be seized by any peace officer to be disposed of as herein provided."

No Missouri decision has been cited us nor have we found any construing the above section. A reading of said section, however, discloses that the Legislature has designated and classified "punchboards" as a gambling device, made their mere possession a misdemeanor and declared them to be contraband to be disposed of as provided by law. This section does not require that the punchboard be used in gambling or that it is about to be used in gambling in order to make it contraband. The statute makes it contraband by classifying it as a gambling device. This construction is supported by Section 563.375 RSMo 1959, V.A.M.S. This section provides that the officer making the seizure shall notify a Magistrate who shall set a date for determining whether the property seized is one of the articles mentioned in Section 563.374, supra, or if not, whether it is gambling equipment of any kind. After written notice to the owner, the owner of the property may appear at the hearing and defend against the charges. The section further provides that "If the magistrate finds that such property is one of the articles or devices mentioned in section 563.374 hereof or if not, that it is gambling equipment of any kind, he shall cause it to be publicly destroyed, * * *." It is evident from the foregoing that our Legislature has defined and classified a "punchboard" as a gambling device per se, made it contraband and its mere possession a crime, regardless of whether it has been, is or will be used for gambling purposes. Similar statutes of other states have been likewise construed as seen from the following cases.

In State v. Appley, 207 S.C. 284, 35 S.E. 2d 835, 162 A.L.R. 1184, the defendant appealed from a conviction and sentence for violation of Section 1301–1 of the Criminal Code of 1942 of the State of South Carolina. The section provided that "It shall be unlawful for any person, firm, or corporation to keep on his, her, or its premises, or operate or permit to be kept on his, her or its premises, or operated within this State, any vending or slot machine, punchboards, pull boards, * * *." The machines in question were pin-ball machines previously declared to be illegal under the statutes. (Alexander v. Martin, Sheriff, 192 S.C. 176, 6 S.E. 2d 20, and Alexander v. Hunnicutt, Sheriff, 196 S.C. 364, 13 S.E.2d 630.) These machines, seventeen in number, had been shipped from Asheville, North Carolina, to Camp Croft. The shipment arrived at the camp after the receiving warehouse was closed and the machines were taken to the Cannon Music Store in Spartanburg and left there on a Saturday afternoon. The following Monday, the sheriff, armed with a search warrant, entered the store, found and seized the machines. They were in varying degrees of disrepair and none were

completely ready for operation. Defendant was manager of the Spartanburg store. On appeal, defendant contended "That the machines were not 'kept' in accordance with the meaning of the statute under which this indictment was brought and that the defendant had never 'kept' or operated same in violation of the code." The Supreme Court of South Carolina, in sustaining the conviction of appellant, says, in 35 S.E.2d 835, l. c. 836:

"The difficulty with the first assignment of error is that the statute contains no requirement that in order to constitute a violation of it an objectionable machine must be kept for the purpose of operation. The 'keeping' is a violation in itself, set off in the law by the disjunctive 'or' from the separate crime of operation. Appellant relies on the North Carolina case of State v. Jones, 218 N.C. 734, 12 S.E. 2d 292, in which an indictment was held fatally defective for failure to include an allegation that the defendant operated the gambling devices or kept them for the purpose of being operated. But the distinction between that case and this is quite apparent for the law under which that prosecution was attempted provided that the possession be 'for the purpose of being operated.' C.S.Supp. 1924, § 4437(b).

"On the other hand it has been decided by other courts, as here, that a statute which makes a crime of the 'keeping' of a gambling device means what it plainly says. It was held in an Illinois case that the mere keeping of a slot machine was an offense under the statute irrespective of whether it was kept for gambling purposes, the court saying: 'It was the purpose of the legislature in enacting this statute, not only to suppress the use of these gambling devices, or the keeping of them for gambling purposes, but also to prohibit the ownership or the keeping of them, whether for gambling purposes or not, otherwise, why make it

a criminal offense to own or keep them, without qualification as to the purpose of such ownership or keeping, and why provide for their seizure and destruction?' Bobel v. People, 173 Ill. 19, 28, 50 N.E. 322, 324, 64 Am.St.Rep. 64."

In City of Wichita v. Stevens (2 cases) and Solomon, 167 Kan. 408, 207 P.2d 386, separate complaints in police court charged all three defendants with "keeping and having possession of gambling equipment, to-wit punchboards" in violation of Section 33 of city ordinance No. 11–592. They were convicted in police court and each appealed to the district court of Sedgwick County. The district court acquitted defendants, Ellis George Stevens and Frank Solomon, but found defendant, Nick S. Stevens, guilty. The record indicates that the court determined as a matter of law with regard to all three defendants that their possession in a warehouse or wholesale house of punchboards without prize merchandise attached to them was not a violation of said ordinance. Some of the punchboards in possession of defendant Nick Stevens had merchandise attached to them and these were held to violate said ordinance.

For the purpose of settling the legal question involved, the city attorney made and filed an affidavit pursuant to the Kansas statute stating the question reserved for decision by the Supreme Court as follows: "Was the defendant in the above cause, who admittedly owned and had in his possession in a warehouse, located in the City of Wichita, Kansas, punchboards, described and introduced in evidence in the above entitled case, to-wit: punchboards having no merchandise or money attached thereto, guilty of a violation of Section 33 of Ordinance No. 11–592."

The record in that case showed that all three defendants were wholesale distributors or jobbers of tobacco, candy, novelties, etc., with places of business in Wichita; the police officers found a large quantity of punchboards of various sizes, types and brands at the place of business of each

appellee; none of appellees operated the punchboards themselves nor permitted them to be operated on their premises but sold them to others over their territory.

Section 33 of City Ordinance No. 11–592 provides: "Any person who shall set up or keep or have in his possession in any public or private place in the City of Wichita any *'punch board'* * * * shall be deemed guilty of a misdemeanor * * *." In sustaining the appeal by the City of Wichita on the question reserved, the Supreme Court of Kansas said, 207 P.2d 1. c. 390:

> "We have difficulty in concluding, as was concluded by the trial court, that the merchandise being attached to the punchboards makes them any more objectionable under the ordinance than without it. Punchboards such as those involved here are gambling devices, whether or not there is attached to them merchandise, money or prices. Punchboards without such thing of value attached are punchboards none the less. They have no use or purpose other than for gambling, and recognizing this, the city enacted an ordinance making their possession unlawful. A gambling device is any instrument adapted and designed to play any game of chance for money or property. Boynton v. Ellis, 10 Cir., 57 F.2d 665. Under its police powers the city had authority to prohibit the possession of punchboards just as it had authority to prohibit the possession of slot machines. Both such devices are prohibited by section 33 of city ordinance No. 11–592, and this identical ordinance was held constitutional in Clemons v. Wilson, 151 Kan. 250, 98 P.2d 423, which involved the possession of slot machines. Neither does the ordinance make any distinction between punchboards located in a warehouse or wholesale house and those under or upon the counters of retail stores or shops. Their possession in *any public or private place* is made unlawful. The city ordinance in question should have been construed to prohibit the possession of punchboards with or without merchandise or prizes attached, and whether located in warehouses, wholesale houses or any other place."

In the case at bar, the appellants contend that the "punchboards" were not shown to have been used in any gambling or gaming operation, involving a pay-off in money or property, hence the possession was not unlawful. Similar contentions were made in the Kansas case, supra. The Supreme Court of Kansas, in disposing of the contention, says in 207 P.2d 386, 1. c. 390:

> "Appellees say 'the case at bar is one of fact and not one of law'. But the ordinance under consideration prohibits punchboards, slot machines, and other gambling devices. Under such an ordinance there was no occasion to determine as a question of fact whether punchboards were or were not gambling devices. In any event they were an instrument which the city determined was detrimental to the peace and welfare of the city, and within its police power the city may prohibit possession of them. We said earlier in this opinion that they were gambling devices—and by that description the ordinance further prohibits possession. The question here is one of law to construe and apply the plain language of a city ordinance."

In State v. Doe et al., 227 Iowa 1215, 290 N.W. 518, eighty-three slot machines and 148 punchboards were seized as gambling devices under a search warrant duly issued and they were ordered forfeited, resulting in this appeal. In affirming the forfeiture by the lower court, the Supreme Court of Iowa says, 290 N.W. 1. c. 522:

> "The next assignment of error by appellant is that the court erred in approving the seizure of the property, for the reason that the machines seized are not gambling devices per se, subject to condemnation. Appellant urges that

the record fails to show that the devices in question had ever been used for gambling, were being used for gambling, or were intended to be so used, and that therefore they cannot be legally condemned, citing 12 Ruling Case Law 729, and a large number of cases from other jurisdictions. The State, however, cites section 13198 of the Code of 1935, which is as follows: 'If any person keep a house, shop, or place resorted to for the purpose of gambling, or permit or suffer any person in any house, shop, or other place under his control or care to play at cards, dice, faro, roulette, equality, punch board or other game for money or other thing, such offender shall be fined * * *.'

"Also section 13210 of the Code of 1935, providing that no one shall in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in his possession or control, any roulette wheel, klondike table, poker table, punch board, faro, or keno layouts.

"These sections formerly had not included the words 'punch board' but the statutes were amended by the insertion of the words in each section by the Forty-third General Assembly in 1929 (chapter 262).

"The Forty-seventh General Assembly (chapter 231, § 1) amended section 13198 by inserting a comma after the word 'board' and inserting thereafter the words 'slot machine', and amended section 13210 by striking the period and inserting the following: 'or any other machines used for gambling, or any slot machine or device with an element of chance attending such operation.' Section 2.

"The statutes therefore now include slot machines, and the State insists that this is a well known term applying to gambling devices, and not ordinarily used for mere vending machines.

There is authority for the State's contention. In the case of State v. Ellis, 200 Iowa 1228, 206 N.W. 105, and the case of State ex rel. Manchester v. Marvin, 211 Iowa 462, 233 N.W. 486, decided before the amendment to the statute, certain machines were defined as gambling devices, but evidence of use therefor was required. And to the same effect see State v. Doe, 221 Iowa 1, 263 N.W. 529. But the State contends that the rule as to evidence of use has been changed by the amendment to the statute by the Forty-seventh General Assembly, and the mere possession of a slot machine is made unlawful by such amendment, citing Parker-Gordon Imp. Co. v. Benakis, 213 Iowa 136, 238 N.W. 611, 614, which had reference to punch boards, and in which the court says: 'The Legislature of this state, by incorporating the word "punch board" into sections 13198 and 13210 hereinbefore quoted, recognized a punch board as a gambling device.' "

In Commonwealth v. Logan, 172 Pa. Super. 365, 94 A.2d 99, the officers, under a search warrant, seized "4393 red punch boards and picture cards and different types of punch boards." They were seized under authority of Section 604 of the Code, 18 P.S. § 4604 (Pennsylvania) "which classifies punch boards with slot machines as gambling devices and makes the assembling and manufacture of them a misdemeanor when intended to be so used." That court, in sustaining the order of confiscation and destruction of the punch boards, says, 94 A.2d 1. c. 102:

"Appellant does not question the procedure; he contests the legality of the order on the single ground that the punch boards seized in the warehouse of the Logan Company were never actually used for unlawful gaming. The fact that they were not so used is not controlling under the circumstances; the important consideration is that many of the punch boards were per se gambling devices and on the basis of

the evidence all were intended to be used for gambling. Since under the evidence the punch boards were gambling devices they are outlaw property and may be confiscated and destroyed although never actually used for the illegal purposes for which they were intended. Commonwealth v. Kaiser, 80 Pa.Super. 26. Cf. Urban's Appeal, 148 Pa.Super. 101, 113, 24 A.2d 756. Commonwealth v. Handmore, 60 Dauph. Co. 416, is identical in principle with the phase of the instant case involved in this appeal. There Judge Woodside reviewed the law applicable to the forfeiture and destruction of similar punch boards as gambling devices. We are in entire accord with the holding of that case to the effect that the court may order the destruction of punch boards when they are shown to be gambling devices, regardless of whether the boards were set up or otherwise actually employed for unlawful gaming. In re Wigton's Return, 151 Pa.Super. 337, 30 A.2d 352, on which appellant strongly relies is not controlling."

Our statute, Section 563.374, supra, is more strict than Section 604, supra, as it classifies "punch boards" as a gambling device per se and authorizes seizure regardless of use.

In jurisdictions where slot machines, punchboards, etc., are expressly brought within the gambling statutes, the mere keeping or possession of such apparatus is declared a criminal offense, whether it is kept or used for gambling or not, and such apparatus is contraband. 24 Am.Jur. 423; Elder v. Camp, Sheriff, 193 Ga. 320, 18 S.E.2d 622; Hurvich v. State, 230 Ala. 578, 162 So. 362; Clark v. Holden, 191 Miss. 7, 2 So.2d 570; State v. Branney, 62 Wyo. 40, 160 P.2d 972; State v. Appley, 207 S.C. 284, 35 S.E.2d 835; Commonwealth v. Logan, 172 Pa.Super. 365, 94 A.2d 99; State v. Doe et al., 227 Iowa 1215, 290 N.W. 518; City of Wichita v. Stevens et al., 167 Kan. 408, 207 P.2d 386.

The appellants contend as a defense to the order of confiscation of the "punch boards" there was no proof that such "punch boards" were gaming devices or used in any gambling or gaming operation within the purview of Section 542.380 RSMo 1959, V.A.M.S. That section provides for the issuance of a search warrant and paragraph (1) of said section provides for the seizure of "Any gaming table, or other gaming device or apparatus used in gambling, [etc.]" There is nothing before this court on appeal as to validity of the search warrant or suppression of any articles taken thereunder. The return to the search warrant did show the seizure of many devices, some of which were classified as gambling devices under section 563.374, supra, and many which were not named therein. The lower court did not include many such items in its order of confiscation, presumably on the theory that there was no proof that they were gambling devices. But such ruling would not and does not apply here as to the punchboards involved. Under that section (563.374) of the statute, there was no occasion to determine as a question of fact whether the punchboards were or were not gambling devices. That statute named and classified them as gambling devices per se and made them contraband and subject to confiscation. It would be an anomalous situation to require proof that a punchboard was a gambling device or used in gambling in the face of that statute which classifies and designates "punch boards" as gambling devices.

Appellants cite several cases in support of their contention that the state had to prove that the "punch boards" were being used in a gambling or gaming operation. Most of them construe what is now Section 542.380 RSMo 1959, V.A.M.S. All of them were decided before Section 563.374, which was enacted in 1951, became a law. In State v. One "Jack and Jill" Pinball Machine, Mo.App., 224 S.W.2d 854, the court held that a pin ball machine was not a gambling device within the terms of Section 542.380. In State v. Gilmore, 98 Mo.

206, 11 S.W. 620, defendant was prosecuted for violation of Section 1547 RSMo 1879 prohibiting the setting up or keeping a gambling device. In State v. Herndon, 339 Mo. 283, 96 S.W.2d 376, defendant was charged, under what is now Section 563.370, of setting up and keeping a crap table. In State v. Morris, 272 Mo. 522, 199 S.W. 144, defendant was charged under what is now Section 563.370, of setting up and keeping a poker table. In McCoy v. Zane, 65 Mo. 11, the Sheriff was sued for damages for destroying a roulette wheel and table which was confiscated under a statute entirely different from Section 563.374. In State ex rel. Igoe v. Joynt, 341 Mo. 788, 110 S.W.2d 737, Supreme Court prohibited Judge Joynt from enjoining the St. Louis Board of Police Commissioners from destroying a gambling device known as "rotary merchandisers." None of the above cases are controlling or are in point here.

Appellants contend that approximately thirty percent of the seized punchboards were plain or blank boards similar to Defendants' Exhibit "A" and that said boards were not shown to have any connection with gambling or gaming and that their seizure was unwarranted and that they should be returned to them and not destroyed. Exhibit "A" is a board type punchboard. On the face of the board are five strips of holes outlined in red and five strips outlined in yellow. There are a total of one thousand holes filled with numbered foils. The top of the board, where the price of the punches and awards are usually shown, is blank. The only difference between this and other boards is that the printed sheet showing prices, prizes and awards has not yet been attached to the board. It is a punchboard nevertheless and it is a simple operation for the possessor to attach the printed directions furnished by the manufacturer or to attach his own schedule of prices, prizes and awards.

On the trial below, Sergeant Kleine testified that to his knowledge there were no plain punchboards taken. At request of appellants' counsel, he rechecked at noon re-cess and later testified that none were taken to his knowledge. If some were taken, they were also subject to confiscation. They were still punchboards even if the directions had not been attached. In State v. Appley, 207 S.C. 284, 35 S.E.2d 835, 1. c. 836, pin ball machines were ordered confiscated and the court found that "They were in varying degrees of disrepair and none was completely ready for operation," yet such fact did not save them from destruction. The trial court did not find that there were any punchboards seized which were not subject to confiscation and the record here supports his ruling.

The order of the trial court confiscating and destroying the punchboards is affirmed.

WOLFE, Acting P. J., and RAY E. WATSON, Special Judge, concur.

ANDERSON, P. J., and RUDDY, J., not participating.